1
2
3
4
5
6
7
8                    UNITED STATES DISTRICT COURT

9                FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   PAUL DAVID CARR,                      No.  2:24-cv-1680 DJC AC P

12                   Plaintiff,

13         v.                              ORDER

14   CUEVA, et al,

15                   Defendants.

16

17         Plaintiff is a state inmate who filed this civil rights action pursuant to 42 U.S.C. § 1983

18   without a lawyer.  He has been granted leave to proceed in forma pauperis.  ECF No. 12.

19         In screening the original complaint, the undersigned gave plaintiff the option to proceed

20   on his cognizable claim against defendant Dr. Dail or amend the complaint.  ECF No. 12 at 3-5.

21   Plaintiff elected to amend the complaint, ECF No. 17, and has since filed two amended

22   complaints.  ECF Nos. 28, 31.[1]  The court now screens the Second Amended Complaint, ECF No.

23   31.

24   ////

25

26   [1]  According to plaintiff, the two amended complaints are the same except for the removal of one
     defendant in the second amended complaint.  See ECF No. 28 at 4, 15, 16; ECF No. 31 at 4, 15,
27   16; ECF No. 32 at 2.  Although plaintiff refers to both amended complaints as FACs, for the sake
     of clarity, the court will refer to the most recently filed FAC, ECF No. 31, as the SAC and screen
28   the SAC.

                                    1

1      I.      Statutory Screening of Prisoner Complaints

2              The court is required to screen complaints brought by prisoners seeking relief against "a

3      governmental entity or officer or employee of a governmental entity."  28 U.S.C. § 1915A(a).  A

4      claim "is [legally] frivolous where it lacks an arguable basis either in law or in fact."  Neitzke v.

5      Williams, 490 U.S. 319, 325 (1989).  The court may dismiss a claim as frivolous if it is based on

6      an indisputably meritless legal theory or factual contentions that are baseless.  Id. at 327.  The

7      critical inquiry is whether a constitutional claim, however inartfully pleaded, has an arguable

8      legal and factual basis.  Jackson v. Arizona, 885 F.2d 639, 640 (9th Cir. 1989), superseded by

9      statute on other grounds as stated in Lopez v. Smith, 203 F.3d 1122, 1130 (9th Cir. 2000).

10             In order to avoid dismissal for failure to state a claim a complaint must contain more than

11     "naked assertion[s]," "labels and conclusions," or "a formulaic recitation of the elements of a

12     cause of action."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555, 557 (2007).  In other words,

13     "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory

14     statements, do not suffice."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).  A claim upon which the

15     court can grant relief has facial plausibility.  Twombly, 550 U.S. at 570.  "A claim has facial

16     plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable

17     inference that the defendant is liable for the misconduct alleged."  Iqbal, 556 U.S. at 678 (citation

18     omitted).  When considering whether a complaint states a claim, the court must accept the

19     allegations as true, Erickson v. Pardus, 551 U.S. 89, 94 (2007) (per curiam), and construe the

20     complaint in the light most favorable to the plaintiff, Jenkins v. McKeithen, 395 U.S. 411, 421

21     (1969) (citations omitted).

22     II.     Factual Allegations of the Second Amended Complaint

23             The SAC alleges that defendants Traci Patterson, Dr. Cody Dail, T. Rodriguez, J.

24     Sandoval, and A. Silva violated plaintiff's constitutional rights, conspired to prevent adequate

25     nutrition in violation of 18 U.S.C. § 241 and 42 U.S.C. § 1985, and denied plaintiff's rights under

26     the Americans with Disabilities Act.  ECF No. 31 at 1-3, 5-7, 9-15.  Specifically, plaintiff alleges

27     the following.

28             Plaintiff suffers from Degenerative Disk Disease, Chronic Obstructive Pulmonary Disease

("COPD"), severe arthritis, old age, and weight problems.  Id. at 9-11.  On August 13, 2023, at

CMF, defendant Rodriguez refused to honor the Substance Abuse Treatment Facility ("SATF")

lay-in/chrono for cell feeding.  Id. at 12.  As a result, plaintiff went three days without proper

nutrition, until a doctor granted plaintiff a six month lay-in for cell feeding.  Id.  When the six

months expired, another doctor granted a ninety day lay-in that expired on May 31, 2024.  Id.

On April 26, 2024, before plaintiff's cell feeding chrono expired, defendant Dr. Dail

denied renewal because the Chief Executive Officer ("CEO") of California Medical Facility

("CMF"), defendant Patterson, instituted a "blanket policy denying cell feeding regardless of

medical need."  Id. at 9, 10.  Despite Dr. Dail's stated reason for the denial, Dr. Dail's progress

notes from April 26, 2024, falsely claim plaintiff was denied renewal of his cell feed chrono

because he "does not meet medical necessity."  Id. at 11.  Plaintiff further claims that Dr. Dail

made other false representations about plaintiff in his notes and improperly ordered plaintiff to

take his KN-95 mask off in the crowded chow hall, even though plaintiff is high-risk to COVID-

19 due to his COPD.  Id.

In July and December 2024, two other doctors and a nurse confirmed that cell feeding was

prohibited by management.  Id.  According to plaintiff, Dr. Dail's denial based on the no cell feed

chrono policy establishes a conspiracy.

Plaintiff also claims that defendant Patterson violated his rights by instituting the no cell

feeding chrono policy, denying plaintiff cell feeding despite the broken elevators that prevented

plaintiff from accessing the chow hall, and submitting a health care grievance on plaintiff's behalf

without plaintiff's knowledge or consent.  Id. at 9, 10.

Plaintiff further alleges that while plaintiff's appeal of Dr. Dail's denial was pending,

CMF kitchen staff continued to send food trays to plaintiff's cell.  Id. at 12.  On June 15, 2024,

defendant Sandoval blocked delivery of plaintiff's food tray, causing plaintiff a panic attack,

necessitating medication.  Id. at 13.  That same day, defendant Rodriguez went to the kitchen and

ordered that they stop sending plaintiff food trays.  Id. at 12.  Defendant Rodriguez did this

despite knowing that plaintiff had not had breakfast or lunch that day.  Id.

Defendant Sandoval continued to block food from plaintiff and on August 14, 2024,

1   entered plaintiff's cell and confiscated peanut butter packets another inmate had given plaintiff.

2   Id. at 14.  Additionally, on September 3, 2024, another officer told plaintiff that defendant

3   Rodriguez had told the officer not to allow plaintiff to receive donated food trays because he did

4   not have a cell feeding chrono at the time.  Id. at 13.  Plaintiff claims Rodriguez's and Sandoval's

5   conduct establishes a conspiracy to deprive him of adequate nutrition.  Id.

6        Plaintiff also claims defendant Silva is involved in this conspiracy.  Id. at 15.  He alleges

7   that on December 11, 2024 and January 6, 2025, defendant Silva refused to allow plaintiff to take

8   his dinner to his cell, despite knowing that this was plaintiff's only meal of the day.  Id. at 14.

9   When plaintiff refused to give up his dinner, defendant Silva threw away plaintiff's dinner and

10  conducted a strip search.  Id.  The second time, defendant Silva searched plaintiff's body and

11  wheelchair, and issued a general chrono "that Forever Forbade Plaintiff From taking any food

12  From the chow hall."  Id.  Silva did this in spite of Title 15, section 3055, which gives discretion

13  to officers and staff to permit inmates to take food from the chow hall.  Id. at 15.  Plaintiff asserts

14  that defendant Silva's actions were discriminatory and retaliatory because numerous other

15  inmates are allowed to take food from chow hall with permission from staff.  Id.

16       Plaintiff asserts that because of defendants' conduct he was deprived of food for eight

17  months and suffers from constant hunger, fatigue, bowel distress, anemia, vitamin D deficiency,

18  increased stress and anxiety, panic attacks, and unnecessary risk of contracting serious disease.

19       By way of relief, plaintiff seeks monetary damages.  Id. at 16, 17.  He claims he is entitled

20  to base amount of $25,000.00 under the Tom Bane Act and separate amounts for each deprivation

21  of a meal and libelous statements.  Id. at 16.

22       III.    Claims for Which a Response Will Be Required

23       After conducting the screening required by 28 U.S.C. § 1915A(a), and drawing all

24  inferences in the plaintiff's favor, the court finds that plaintiff has adequately stated an Eighth

25  Amendment claim of deliberate indifference to plaintiff's nutritional needs against defendants

26  Patterson, Dr. Dail, Rodriguez, Sandoval, and Silva.

27  ////

28  ////

1    IV.    Failure to State a Claim

2    However, the allegations in the complaint are not sufficient to state any First, Fourth, or

3    Fourteenth claims under the U.S. Constitution, or any claims under 18 U.S.C. § 241, 42 U.S.C.

4    § 1985, the ADA, or state laws or regulations.

5    Plaintiff fails to state any claims against defendant Silva.  He fails to state a retaliation

6    claim against Silva because he does not allege that Silva's conduct was motivate by plaintiff's

7    protected conduct, and that Silva's conduct chilled plaintiff's exercise of his First Amendment

8    rights in any way.  Similarly, plaintiff fails to state an equal protection claim against Silva

9    because he has not alleged that he is a member of any protected class, and that Silva

10   discriminated against him based on such membership.  Also, to the extent plaintiff claims

11   defendant Silva's search was unconstitutional, such claim fails because plaintiff does not allege

12   the search was conducted solely for the purposes of harassing him or for Silva's sexual

13   gratification.  In fact, plaintiff acknowledges there was a penological justification for the search.

14   Plaintiff also fails to allege any other facts concerning the manner of the search to allow the court

15   to infer it was in some other way unreasonable.

16   Moreover, to the extent plaintiff alleges a Tom Bane Civil Rights Act violation against

17   defendant Silva or any other defendant, such claim fails because he has not stated any cognizable

18   claim against Silva, and because he does not allege any facts regarding the use of threats,

19   intimidation, or coercion with the specific intent to violate plaintiff's constitutional rights.

20   With respect to plaintiff's ADA claim, plaintiff cannot sue Patterson in her individual

21   capacity under the ADA.  And although plaintiff also sues Patterson in her official capacity, he

22   fails to state a claim because he has not alleged that he has a qualifying disability under the ADA,

23   and that he was excluded on account of such disability.

24   To the extent plaintiff alleges his due process rights were violated when Patterson

25   submitted a health care grievance on his behalf without his knowledge or consent, he fails to state

26   a claim because inmates lack a constitutional right to a specific prison grievance procedure.

27   Plaintiff's conspiracy claims against defendants Dr. Dail, Rodriguez, Sandoval, and Silva under

28   42 U.S.C. § 1985(3) also fail because vague and conclusory allegations that they conspired,

1    without facts that demonstrate an agreement between the defendants is insufficient.  Moreover,

2    even assuming that these officers agreed to implement the no cell feeding policy and that such

3    facts are well-pleaded, they would be entitled to qualified immunity.

4         Plaintiff further fails to state any claim against any defendant for: conspiracy under 18

5    U.S.C. § 241 because § 241 is a criminal statute that does not provide a private right of action;

6    violation of state laws because he does not allege compliance with the Government Claims Act;

7    violation of state regulations because § 1983 claims require a violation of a *federal* right.

8         It appears to the court that plaintiff may be able to allege facts to fix *some* of these

9    problems.  Therefore, plaintiff has the option of filing an amended complaint.

10    V.    Options from Which Plaintiff Must Choose

11         Based on the court's screening, plaintiff has a choice to make.  After selecting an option

12    from the two options listed below, plaintiff must return the attached Notice of Election form to

13    the court within 21 days from the date of this order.

14    **The first option available to plaintiff is to proceed immediately against defendants**

15    **Patterson, Dr. Dail, Rodriguez, Sandoval, and Silva on Eighth Amendment deliberate**

16    **indifference claim to plaintiff's nutritional needs.  By choosing this option, plaintiff will be**

17    **agreeing to voluntarily dismiss all other claims against these defendants under the First,**

18    **Fourth, or Fourteenth Amendment to the United States Constitution, or under 18 U.S.C.**

19    **§ 241, 42 U.S.C. § 1985, the ADA, or any state law or regulation.  The court will proceed to**

20    **immediately serve the complaint and order a response from defendants Patterson, Dr. Dail,**

21    **Rodriguez, Sandoval, and Silva.**

22    **The second option available to plaintiff is to file an amended complaint to fix the**

23    **problems described in Section IV.  If plaintiff chooses this option, the court will set a**

24    **deadline in a subsequent order to give plaintiff time to file an amended complaint.**

25    VI.    Plain Language Summary of this Order for Party Proceeding Without a Lawyer

26         Some of the allegations in the complaint state claims against the defendants and some do

27    not.  You have stated Eighth Amendment claims against defendants Patterson, Dr. Dail,

28    Rodriguez, Sandoval, and Silva for depriving you of adequate nutrition.  You have not stated any

1    other claims against these defendants for the conduct you have alleged.

2        You have a choice to make.  You may either (1) proceed immediately on your Eighth

3    Amendment claims against defendants Patterson, Dr. Dail, Rodriguez, Sandoval, and Silva and

4    voluntarily dismiss the other claims; or, (2) try to amend the complaint.

5        To decide whether to amend your complaint, the court has attached the relevant legal

6    standards that may govern your claims for relief.  See Attachment A.  Pay particular attention to

7    these standards if you choose to file an amended complaint.

8                              CONCLUSION

9        In accordance with the above, IT IS HEREBY ORDERED that:

10       1.  Plaintiff's allegations against defendants Patterson, Dr. Dail, Rodriguez, Sandoval,

11   and Silva do not state First, Fourth, or Fourteenth Amendment claims under the U.S.

12   Constitution, or any claims under 18 U.S.C. § 241, 42 U.S.C. § 1985, the ADA, or state laws or

13   regulations.

14       2.  Plaintiff has the option to proceed immediately on his Eighth Amendment deliberate

15   indifference to plaintiff's adequate nutrition against defendants Patterson, Dr. Dail, Rodriguez,

16   Sandoval, and Silva as set forth in Section III above, or to file an amended complaint.

17       3.  Within 21 days from the date of this order, plaintiff shall complete and return the

18   attached Notice of Election form notifying the court whether he wants to proceed on the screened

19   complaint or whether he wants to file an amended complaint.

20       4.  If plaintiff does not return the form, the court will assume that he is choosing to

21   proceed on the complaint as screened and will recommend dismissal without prejudice of

22   plaintiff's First, Fourth, and Fourteenth Amendment claims, as well as plaintiff's claims under 18

23   U.S.C. § 241, 42 U.S.C. 1985, the ADA, and state laws and regulations.

24   DATED: April 21, 2025

25

26                                ALLISON CLAIRE
                                 UNITED STATES MAGISTRATE JUDGE
27

28

7

1
2
3
4
5
6
7
8                      UNITED STATES DISTRICT COURT
9                  FOR THE EASTERN DISTRICT OF CALIFORNIA
10

11   PAUL DAVID CARR,                        No.  2:24-cv-1680 DJC AC P
12                 Plaintiff,
13        v.                                 NOTICE OF ELECTION
14   DANIEL E. CUEVA, et al.,
15                 Defendants.
16

17        Check one:

18   _____   Plaintiff wants to proceed immediately on his Eighth Amendment claims against

19   defendants Patterson, Dr. Dail, Rodriguez, Sandoval, and Silva without amending the

20   complaint.  Plaintiff understands that by choosing this option, the remaining First, Fourth,

21   and Fourteenth Amendment claims under the U.S. Constitution, and claims under 18

22   U.S.C. § 241, 42 U.S.C. § 1985, the ADA, and state laws and regulations will be

23   voluntarily dismissed without prejudice pursuant to Federal Rule of Civil Procedure 41(a).

24   _____   Plaintiff wants time to file an amended complaint.

25

26   DATED:_____

27                                           _____
                                             Paul David Carr
28                                           Plaintiff pro se

                                        1

1

<u>Attachment A</u>

2      This Attachment provides, for informational purposes only, the legal standards that may

3  apply to your claims for relief.  Pay particular attention to these standards if you choose to file an

4  amended complaint.

5      I.   <u>Legal Standards Governing Amended Complaints</u>

6      If plaintiff chooses to file an amended complaint, he must demonstrate how the conditions

7  about which he complains resulted in a deprivation of his constitutional rights.  <u>Rizzo v. Goode</u>,

8  423 U.S. 362, 370-71 (1976).  Also, the complaint must specifically identify how each named

9  defendant is involved.  <u>Arnold v. Int'l Bus. Machs. Corp.</u>, 637 F.2d 1350, 1355 (9th Cir. 1981).

10  There can be no liability under 42 U.S.C. § 1983 unless there is some affirmative link or

11  connection between a defendant's actions and the claimed deprivation.  <u>Id.</u>; <u>Johnson v. Duffy</u>,

12  588 F.2d 740, 743 (9th Cir. 1978).  Furthermore, "[v]ague and conclusory allegations of official

13  participation in civil rights violations are not sufficient."  <u>Ivey v. Bd. of Regents</u>, 673 F.2d 266,

14  268 (9th Cir. 1982) (citations omitted).

15      Plaintiff is also informed that the court cannot refer to a prior pleading in order to make

16  his amended complaint complete.  <u>See</u> Local Rule 220.  This is because, as a general rule, an

17  amended complaint replaces the prior complaint.  <u>Loux v. Rhay</u>, 375 F.2d 55, 57 (9th Cir. 1967)

18  (citations omitted), <u>overruled in part by</u> <u>Lacey v. Maricopa County</u>, 693 F.3d 896, 928 (9th Cir.

19  2012).  Therefore, in an amended complaint, every claim and every defendant must be included.

20      II.  <u>Legal Standards Governing Substantive Claims for Relief</u>

21         A.  <u>Section 1983</u>

22  Section 1983 provides in relevant part:

23         Every person who, under color of any statute, ordinance, regulation,
            custom, or usage, of any State or Territory or the District of
24         Columbia, subjects, or causes to be subjected, any citizen of the
            United States or other person within the jurisdiction thereof to the
25         deprivation of any rights, privileges, or immunities secured by the
            Constitution and laws, shall be liable to the party injured in an action
26         at law, suit in equity, or other proper proceeding for redress . . . .

27  42 U.S.C. § 1983.  Accordingly, "the requirements for relief under [§] 1983 have been articulated

28  as: (1) *a violation of rights protected by the Constitution or created by federal statute,* (2)

1   proximately caused (3) by conduct of a 'person' (4) acting under color of state law." <u>Crumpton v.</u>

2   <u>Gates</u>, 947 F.2d 1418, 1420 (9th Cir. 1991) (emphasis added).

3       An officer's violation of state laws and/or regulations is not grounds for a § 1983 claim.

4   <u>See Case v. Kitsap County Sheriff's Dept.</u>, 249 F.3d 921, 930 (9th Cir. 2001) (quoting <u>Gardner v.</u>

5   <u>Howard</u>, 109 F.3d 427, 430 (8th Cir 1997) ("[T]here is no § 1983 liability for violating prison

6   policy. [Plaintiff] must prove that [the official] violated his constitutional right . . .")).  Violations

7   of state law and regulations cannot be remedied under § 1983 unless they also violate a federal

8   constitutional or statutory right.  <u>See Nurre v. Whitehead</u>, 580 F.3d 1087, 1092 (9th Cir. 2009)

9   (section 1983 claims must be premised on violation of federal constitutional right); <u>Sweaney v.</u>

10  <u>Ada Cty., Idaho</u>, 119 F.3d 1385, 1391 (9th Cir. 1997) (section 1983 creates cause of action for

11  violation of federal law); <u>Lovell v. Poway Unified Sch. Dist.</u>, 90 F.3d 367, 370 (9th Cir. 1996)

12  (federal and state law claims should not be conflated; "[t]o the extent that the violation of a state

13  law amounts the deprivation of a state-created interest that reaches beyond that guaranteed by the

14  federal Constitution, Section 1983 offers no redress").

15          B.  <u>Personal Involvement and Supervisory Liability</u>

16      The civil rights statute requires that there be an actual connection or link between the

17  actions of the defendants and the deprivation alleged to have been suffered by

18  plaintiff.  <u>See Monell v. Department of Social Services</u>, 436 U.S. 658 (1978); <u>Rizzo v. Goode</u>,

19  423 U.S. 362 (1976).  The Ninth Circuit has held that "[a] person 'subjects' another to the

20  deprivation of a constitutional right, within the meaning of section 1983, if he does an affirmative

21  act, participates in another's affirmative acts, or omits to perform an act which he is legally

22  required to do that causes the deprivation of which complaint is made." <u>Johnson v. Duffy</u>, 588

23  F.2d 740, 743 (9th Cir. 1978) (citation omitted).  To state a claim for relief under section 1983,

24  plaintiff must link each named defendant with some affirmative act or omission that demonstrates

25  a violation of plaintiff's federal rights.

26      Government officials may not be held liable for the unconstitutional conduct of their

27  subordinates under a theory of respondeat superior.  <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 677

28  (2009) ("In a § 1983 suit . . . the term 'supervisory liability' is a misnomer.  Absent vicarious

2

1    liability, each Government official, his or her title notwithstanding is only liable for his or her

2    own misconduct.").  When the named defendant holds a supervisory position, the causal link

3    between the defendant and the claimed constitutional violation must be specifically alleged; that

4    is, a plaintiff must allege some facts indicating that the defendant either personally participated in

5    or directed the alleged deprivation of constitutional rights or knew of the violations and failed to

6    act to prevent them.  See Fayle v. Stapley, 607 F.2d 858, 862 (9th Cir. 1979); Taylor v. List, 880

7    F.2d 1040, 1045 (9th Cir. 1989); Mosher v. Saalfeld, 589 F.2d 438, 441 (9th Cir. 1978).

8    Supervisory liability exists even without overt personal participation in the offensive act if

9    supervisory officials implement a policy so deficient that the policy "itself is a repudiation of

10   constitutional rights" and is "the moving force of a constitutional violation."  Crowley v.

11   Bannister, 734 F.3d 967, 977 (9th Cir. 2013) (citing Hansen v. Black, 885 F.2d 642, 646 (9th Cir.

12   1989)).

13            C.  First Amendment Retaliation

14        "Within the prison context, a viable claim of First Amendment retaliation entails five

15   basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2)

16   because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's

17   exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate

18   correctional goal.  Rhodes v. Robinson, 408 F.3d 559, 567-68 (9th Cir. 2005) (citations omitted).

19   Filing an inmate grievance is a protected action under the First Amendment.  Bruce v. Ylst, 351

20   F.3d 1283, 1288 (9th Cir. 2003).  Harm that "would chill a 'person of ordinary firmness' from

21   complaining" is sufficient to find an "adverse action."  Shepard v. Quillen, 840 F.3d 686, 691 (9th

22   Cir. 2016) (quoting Rhodes, 408 F.3d at 569) (placement in administrative segregation or even

23   threat to do so on its own amounts to adverse action satisfying the first element).  The mere threat

24   of harm can be a sufficiently adverse action to support a retaliation claim.  Id. at 688-89.

25            D.  Fourth Amendment – Searches

26        The Fourth Amendment protects against unreasonable searches, and that right is not lost

27   to convicted inmates.  Jordan v. Gardner, 986 F.2d 1521, 1524 (9th Cir. 1993).  However,

28

3

1    "incarcerated prisoners retain a limited right to bodily privacy." Michenfelder v. Sumner, 860

2    F.2d 328, 333 (9th Cir. 1988) (emphasis added).

3         A detention facility's strip-search policy is analyzed using the test for reasonableness

4    outlined in Bell v. Wolfish, as "[t]he Fourth Amendment prohibits only unreasonable searches."

5    Bull v. City and County of San Francisco, 595 F.3d 964, 972 (9th Cir. 2010) (alteration in

6    original) (internal quotation marks omitted) (quoting Bell, 441 U.S. 520, 558 (1979)).  Under

7    Bell, the court must balance "the need for the particular search against the invasion of personal

8    rights that the search entails."  441 U.S. at 559.  To do so, courts must consider "[1] the scope of

9    the particular intrusion, [2] the manner in which it is conducted, [3] the justification for initiating

10   it, and [4] the place in which it is conducted."  Id.

11        Strip searches that are limited to "visual inspection," even if "invasive and embarrassing,"

12   can be resolved in favor of the institution.  Bull, 595 F.3d at 975 (holding that visual strip

13   searches that are held in a "professional manner and in a place that afforded privacy" and done to

14   prevent the smuggling of contraband did not violate Fourth Amendment); Bell, 441 U.S. at 558

15   (routine visual body cavity searches do not violate prisoners' Fourth Amendment rights).

16   However, searches done for the purpose of harassment are not constitutionally valid—the

17   Supreme Court has held that "intentional harassment of even the most hardened criminals cannot

18   be tolerated" by the Fourth Amendment's protections, and that they may even violate the Eighth

19   Amendment.  Hudson v. Palmer, 468 U.S. 517, 528, 530 (1984); see also Michenfelder, 860 F.2d

20   at 332 (strip searches that are "excessive, vindictive, harassing, or unrelated to any legitimate

21   penological interest" may be unconstitutional).   Strip searches where "a prison staff member,

22   acting under color of law and without legitimate penological justification, touched the prisoner in

23   a sexual manner or otherwise engaged in sexual conduct for the staff member's own sexual

24   gratification, or for the purpose of humiliating, degrading, or demeaning the prisoner," Bearchild

25   v. Cobban, 947 F.3d 1130, 1144 (9th Cir. 2020), violate both the Fourth and Eighth Amendments.

26        E.  Eighth Amendment Conditions of Confinement

27        For a prison official to be held liable for alleged unconstitutional conditions of

28   confinement, the prisoner must allege facts that satisfy a two-prong test.  Peralta v. Dillard, 744

4

F.3d 1076, 1082 (9th Cir. 2014) (citing Farmer v. Brennan, 511 U.S. 825, 837 (1994)). The first prong is an objective prong, which requires that the deprivation be "sufficiently serious." Lemire v. Cal. Dep't of Corr. & Rehab., 726 F.3d 1062, 1074 (9th Cir. 2013) (citing Farmer, 511 U.S. at 834). To be sufficiently serious, the prison official's act or omission must result "in the denial of the 'minimal civilized measure of life's necessities." Lemire, 726 F.3d at 1074. The objective prong is not satisfied in cases where prison officials provide prisoners with "adequate shelter, food, clothing, sanitation, medical care, and personal safety." Johnson v. Lewis, 217 F.3d 726, 731 (9th Cir. 2000) (quoting Hoptowit v. Ray, 682 F.2d 1237, 1246 (9th Cir. 1982)). "[R]outine discomfort inherent in the prison setting" does not rise to the level of a constitutional violation. Johnson, 217 F.3d at 731 ("[m]ore modest deprivations can also form the objective basis of a violation, but only if such deprivations are lengthy or ongoing"). Rather, extreme deprivations are required to make out a conditions of confinement claim, and only those deprivations denying the minimal civilized measure of life's necessities are sufficiently grave to form the basis of an Eighth Amendment violation. Farmer, 511 U.S. at 834; Hudson v. McMillian, 503 U.S. 1, 9 (1992). The circumstances, nature, and duration of the deprivations are critical in determining whether the conditions complained of are grave enough to form the basis of a viable Eighth Amendment claim. Johnson, 217 F.3d at 731.

"Adequate food is a basic human need protected by the Eighth Amendment." Kennan v. Hall, 83 F.3d 1083, 1091 (9th Cir. 1996), amended, 135 F.3d 1318 (9th Cir. 1998). Denial of food service presents a sufficiently serious condition to meet the objective prong of the Eighth Amendment deliberate indifference analysis. Foster v. Runnels, 554 F.3d 807, 812-13, n.2 (9th Cir. 2009) (denial of 16 meals over 23 period is sufficiently serious but denial of 2 meals over 9-week period was not sufficiently serious to meet the objective prong of the Eighth Amendment); see also LeMaire v. Maass, 12 F.3d 1444, 1456 (9th Cir. 1993) ("The Eighth Amendment requires only that prisoners receive food that is adequate to maintain health."). Prison officials may withhold food service for legitimate penological purposes. Foster, 554 F.3d at 813-814.

The second prong focuses on the subjective intent of the prison official. Peralta, 744 F.3d at 1082 (9th Cir. 2014) (citing Farmer, 511 U.S. at 837). The deliberate indifference standard

5

1    requires a showing that the prison official acted or failed to act despite the prison official's

2    knowledge of a substantial risk of serious harm to the prisoner.  Id. (citing Farmer, 511 U.S. at

3    842); see also Redman v. County. of San Diego, 942 F.2d 1435, 1439 (9th Cir. 1991).  Mere

4    negligence on the part of the prison official is not sufficient to establish liability.  Farmer, 511

5    U.S. at 835.

6                    F.   Fourteenth Amendment Due Process Clause

7            Prisoners do not have "a separate constitutional entitlement to a specific prison grievance

8    procedure."  Ramirez v. Galaza, 334 F.3d 850, 860 (9th Cir. 2003) (citing Mann v. Adams, 855

9    F.2d 639, 640 (9th Cir. 1988)).  Prison officials are not required under federal law to process

10    inmate grievances in any specific way.  See, e.g., Towner v. Knowles, No. 2:08-cv-2823 LKK

11    EFB, 2009 WL 4281999, at *2, 2009 U.S. Dist. LEXIS 108469 (E.D. Cal. Nov. 20, 2009)

12    (plaintiff failed to state claims that would indicate a deprivation of his federal rights after

13    defendant allegedly screened out his inmate appeals without any basis); Williams v. Cate, No.

14    1:09-cv-0468 OWW YNP, 2009 WL 3789597 at *6, 2009 U.S. Dist. LEXIS 107920 at *6 (E.D.

15    Cal. Nov. 10, 2009) ("Plaintiff has no protected liberty interest in the vindication of his

16    administrative claims.").

17                    G.   Fourteenth Amendment Equal Protection Clause

18            The Fourteenth Amendment's Equal Protection Clause requires the State to treat all

19    similarly situated people equally.  City of Cleburne v. Cleburne Living Ctr., 473 U.S. 432, 439

20    (1985) (citation omitted).  "To state a claim for violation of the Equal Protection Clause, a

21    plaintiff must show that the defendant acted with an intent or purpose to discriminate against him

22    based upon his membership in a protected class."  Serrano v. Francis, 345 F.3d 1071, 1082 (9th

23    Cir. 2003) (citing Barren v. Harrington, 152 F.3d 1193, 1194 (9th Cir. 1998)).  Alternatively, a

24    plaintiff may state an equal protection claim if he shows similarly situated individuals were

25    intentionally treated differently without a rational relationship to a legitimate government

26    purpose.  Vill. of Willowbrook v. Olech, 528 U.S. 562, 564 (2000) (citations omitted).

27            "'[T]he disabled do not constitute a suspect class' for equal protection purposes," Lee v.

28    City of Los Angeles, 250 F.3d 668, 687 (9th Cir. 2001) (quoting Does 1-5 v. Chandler, 83 F.3d

6

1   1150, 1155 (9th Cir. 1996)).

2       H.  Americans with Disabilities Act

3       "The ADA contains five titles: Employment (Title I), Public Services (Title II), Public

4   Accommodations and Services Operated by Private Entities (Title III), Telecommunications

5   (Title IV), and Miscellaneous Provisions (Title V)."  See Americans with Disability Act of 1990,

6   Pub.L. No. 101-336, 104 Stat. 327, 327-28 (1990).  Title II of the ADA applies to inmates within

7   state prisons.  Pennsylvania Dept. of Corrections v. Yeskey, 524 U.S. 206 (1998).  To state a

8   claim for violation of Title II of the ADA, a plaintiff must allege four elements:

9
10
11
12
          (1) [H]e is an individual with a disability; (2) he is otherwise
          qualified to participate in or receive the benefit of some public
          entity's services, programs, or activities; (3) he was either excluded
          from participation in or denied the benefits of the public entity's
          services, programs, or activities, or was otherwise discriminated
          against by the public entity; and (4) such exclusion, denial of
          benefits, or discrimination was by reason of [his] disability.

13  O'Guinn v. Lovelock Corr. Ctr., 502 F.3d 1056, 1060 (9th Cir. 2007); see also Thompson v.

14  Davis, 295 F.3d 890, 895 (9th Cir. 2002); Duvall v. County of Kitsap, 260 F.3d 1124 (9th Cir.

15  2001).

16      "A plaintiff can allege disability discrimination in the provision of inmate services,

17  programs, or activities under the ADA or the Rehabilitation Act by pleading either (1)

18  discrimination based on disparate treatment or impact, or (2) denial of reasonable modifications

19  or accommodations."  Cravotta v. County of Sacramento, 717 F. Supp. 3d 941, 956 (E.D. Cal.

20  2024); see Dunlap v. Ass'n of Bay Area Gov'ts, 996 F. Supp. 962, 965 (N.D. Cal. 1998) ("[T]he

21  ADA not only protects against disparate treatment, it also creates an affirmative duty in some

22  circumstances to provide special, preferred treatment, or 'reasonable accommodation.'").  To

23  support such a disparate impact claim, a plaintiff must demonstrate that the policy has the "effect

24  of denying meaningful access to public services." K.M. ex rel. Bright v. Tustin Unified Sch. Dist.,

25  725 F.3d 1088, 1102 (9th Cir. 2013).  Although § 12132 does not expressly provide for

26  reasonable accommodations, the implementing regulations provide that "[a] public entity shall

27  make reasonable modifications in policies, practices, or procedures when the modifications are

28  necessary to avoid discrimination on the basis of disability, unless the public entity can

1   demonstrate that making the modifications would fundamentally alter the nature of the service,

2   program, or activity."  28 C.F.R. § 35.130(b)(7)(i); see also Pierce v. County of Orange, 526 F.3d

3   1190, 1215 (9th Cir. 2008).

4          "[I]nsofar as Title II [of the ADA] creates a private cause of action for damages against

5   the States for conduct that *actually* violates the Fourteenth Amendment, Title II validly abrogates

6   state sovereign immunity."  United States v. Georgia, 546 U.S. 151, 159 (2006) (emphasis in

7   original).  The proper defendant in an ADA action is the public entity responsible for the alleged

8   discrimination.  United States v. Georgia, 546 U.S. 151, 153 (2006).  State correctional facilities

9   are "public entities" within the meaning of the ADA.  See 42 U.S.C. § 12131(1)(A) & (B); Penn.

10  Dept. of Corrs. v. Yeskey, 524 U.S. 206, 210 (1998); Armstrong v. Wilson, 124 F.3d 1019, 1025

11  (9th Cir. 1997).  ADA claims may not be brought against state officials in their individual

12  capacities.  Stewart v. Unknown Parties, 483 F. App'x 374, 374 (9th Cir. 2012) (citing Lovell v.

13  Chandler, 303 F.3d 1039, 1052 (9th Cir. 2002)); Garcia v. S.U.N.Y. Health Scis. Ctr. of

14  Brooklyn, 280 F.3d 98, 107 (2d Cir. 2001) ("[N]either Title II of the ADA nor § 504 of the

15  Rehabilitation Act provides for individual capacity suits against state officials." (citations

16  omitted)).

17         Compensatory damages are available under the ADA when plaintiff demonstrates that the

18  discrimination he experienced was the result of deliberate indifference, which "requires both

19  knowledge that a harm to a federally protected right is substantially likely, and a failure to act

20  upon that likelihood."  Duvall, 260 F.3d at 1139 (citations omitted).  "When the plaintiff has

21  alerted the public entity to his need for accommodation . . ., the public entity is on notice that an

22  accommodation is required, and the plaintiff has satisfied the first element of the deliberate

23  indifference test."  Id. at 1139.  "[I]n order to meet the second element of the deliberate

24  indifference test, a failure to act must be a result of conduct that is more than negligent, and

25  involves an element of deliberateness."  Id. (citations omitted).

26      I.   Tom Bane Civil Rights Act

27         The Tom Bane Civil Rights Act ("Bane Act"), codified at California Civil Code § 52.1,

28  protects individuals from interference with federal or state rights by creating a cause of action for

8

1  such interference that is carried out "by threats, intimidation or coercion."  See Venegas v.

2  County of Los Angeles, 153 Cal.App.4th 1230, 63 Cal.Rptr.3d 741 (2007); Chaudhry v. City of

3  Los Angeles, 751 F.3d 1096, 1105 (9th Cir. 2014).  Claims under the Bane Act may be brought

4  against public officials who are alleged to interfere with protected rights, and qualified immunity

5  is not available for those claims. Venegas, 63 Cal.Rptr.3d at 753. The Bane Act requires a

6  specific intent to violate the plaintiff's rights.  Reese v. County of Sacramento, 888 F.3d 1030,

7  1043 (9th Cir. 2018).

8       J.   State Laws

9       Under the California Government Claims Act, no action for damages may be commenced

10  against a public employee or entity unless a written claim was timely presented (within six

11  months after the challenged incident) and acted upon before filing suit.  See Cal. Govt. Code

12  §§ 905, 945.4, 950.2.  The resulting suit must "allege facts demonstrating or excusing compliance

13  with the claim presentation requirement" or the state law claim is subject to dismissal.  State of

14  California v. Superior Ct., 32 Cal.4th 1234, 1239 (2004).  "The requirement that a plaintiff must

15  affirmatively allege compliance with the [Government Claims Act] applies in federal court."

16  Butler v. Los Angeles County, 617 F. Supp. 2d 994, 1001 (C.D. Cal. 2008).

17       K.   18 U.S.C. § 241 (Conspiracy)

18       Title 18 U.S.C. § 241 is a criminal statute that forbids conspiracy to "injure, oppress,

19  threaten, or intimidate any person in any State, Territory, Commonwealth, Possession, or District

20  in the free exercise or enjoyment of any right or privilege secured to him by the Constitution or

21  laws of the United States."  Section 241 does not provide a private right of action.  See Aldabe v.

22  Aldabe, 616 F.2d 1089, 1092 (9th Cir. 1980) (holding that 18 U.S.C. § 241 provides "no basis for

23  civil liability"); see also Allen v. Gold Country Casino, 464 F.3d 1044, 1048 (9th Cir. 2006) (no

24  private right of action for violation of criminal statutes).

25       L.   42 U.S.C. § 1985 (Conspiracy)

26       To state a cause of action under § 1985(3), a complaint must allege (1) a conspiracy, (2) to

27  deprive any person or a class of persons of the equal protection of the laws, or of equal privileges

28  and immunities under the laws, (3) an act by one of the conspirators in furtherance of the

1   conspiracy, and (4) a personal injury, property damage or a deprivation of any right or privilege

2   of a citizen of the United States.  Gillespie v. Civiletti, 629 F.2d 637, 641 (9th Cir. 1980) (citing

3   Griffin v. Breckenridge, 403 U.S. 88, 102–03 (1971)).  "[T]here must be some racial, or perhaps

4   otherwise class-based, invidiously discriminatory animus behind the conspirators' action."

5   Griffin, 403 U.S. at 102.  To state a claim under § 1985(3) for a non-race-based class, the Ninth

6   Circuit requires "'either that the courts have designated the class in question a suspect or quasi-

7   suspect classification requiring more exacting scrutiny or that Congress has indicated through

8   legislation that the class required special protection.'"  Sever v. Alaska Pulp Corp., 978 F.2d

9   1529, 1536 (9th Cir. 1992) (quoting Schultz v. Sundberg, 759 F.2d 714, 718 (9th Cir. 1985)).

10  "[T]he absence of a section 1983 deprivation of rights precludes a section 1985 conspiracy claim

11  predicated on the same allegations."  Caldeira v. County of Kauai, 866 F.2d 1175, 1182 (9th Cir.

12  1989) (citing Cassettari v. Nevada Cnty., 824 F.2d 735, 739 (9th Cir. 1987)).

13          The Ninth Circuit requires a plaintiff alleging a conspiracy to violate civil rights to "state

14  specific facts to support the existence of the claimed conspiracy."  Olsen v. Idaho State Bd. of

15  Med., 363 F.3d 916, 929 (9th Cir. 2004) (citation and internal quotation marks omitted); Caldeira,

16  866 F.2d at 1181 ("the plaintiff must show an agreement or 'meeting of the minds' by the

17  defendants to violate his constitutional rights").  The mere statement that defendants "conspired"

18  is not sufficient to state a claim, as "[t]hreadbare recitals of the elements of a cause of action,

19  supported by mere conclusory statements, do not suffice."  Ashcroft v. Iqbal, 556 U.S. 662, 678

20  (2009).

21          M.  Qualified Immunity

22          Even if a constitutional violation occurred, prison officials are entitled to qualified

23  immunity if they acted reasonably under the circumstances.  See Friedman v. Boucher, 580 F.3d

24  847, 858 (9th Cir. 2009); Anderson v. Creighton, 483 U.S. 635, 646 (1987).  When government

25  officials are sued in their individual capacities for civil damages, a court must "begin by taking

26  note of the elements a plaintiff must plead to state a claim . . . against officials entitled to assert

27  the defense of qualified immunity."  Iqbal, 556 U.S. at 675.

28          The doctrine of qualified immunity "protects government officials from 'liability for civil

10

1   damages insofar as their conduct does not violate clearly established statutory or constitutional

2   rights of which a reasonable person would have known.'" <u>Tibbetts v. Kulongoski</u>, 567 F.3d 529,

3   535 (9th Cir. 2009) (quoting <u>Harlow v. Fitzgerald</u>, 457 U.S. 800, 818 (1982)). The qualified

4   immunity analysis involves two parts, determining whether (1) whether the facts that a plaintiff

5   has alleged or shown make out a violation of a constitutional right; and (2) whether the right at

6   issue was clearly established at the time of the defendant's alleged misconduct. <u>Saucier</u>, 533 U.S.

7   194, 201 (2001); <u>see</u> <u>Pearson v. Callahan</u>, 555 U.S. 223, 232, 236 (2009); <u>see also</u> <u>Bull</u>, 595 F.3d

8   at 971. A right is clearly established only if "it would be clear to a reasonable officer that his

9   conduct was unlawful in the situation he confronted." <u>Saucier</u>, 533 U.S. at 202; <u>Norwood v.</u>

10  <u>Vance</u>, 591 F.3d 1062, 1068 (9th Cir. 2010). These prongs need not be addressed in any

11  particular order. <u>Pearson</u>, 555 U.S. at 236.

12      "[C]ourts are divided as to whether or not a § 1985(3) conspiracy can arise from official

13  discussions between or among agents of the same entity." <u>Ziglar v. Abbasi</u>, 582 U.S. 120, 154

14  (2017); <u>see also</u> <u>Fazaga v. Federal Bureau of Investigation</u>, 965 F.3d 1015, reversed and

15  remanded on other grounds, <u>Federal Bureau of Investigation v. Fazaga</u>, 595 U.S. 344 (2022)

16  (Agent defendants were entitled to qualified immunity because at the time they "entered into or

17  agreed-upon policies devised with other employees of the FBI . . . neither this court nor the

18  Supreme Court had held that an intracorporate agreement could subject federal officials to

19  liability under § 1985(3), and the circuits that had decided the issue were split.")

20

21

22

23

24

25

26

27

28

ATTACHMENT A