1
2
3
4
5
6
7
8                        UNITED STATES DISTRICT COURT

9                   FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11    PAUL DAVID CARR,                          No.  2:24-cv-1680 DJC AC P

12                  Plaintiff,

13          v.                                   ORDER

14    CUEVA, et al,

15                  Defendants.

16

17          Plaintiff is a state inmate who filed this civil rights action pursuant to 42 U.S.C. § 1983

18    without a lawyer.  The court previously screened plaintiff's original and second amended

19    complaints and found plaintiff had stated some claims but not others.  ECF Nos. 12, 34.  Each

20    time plaintiff was given the option to proceed on his cognizable claims or amend, id., and each

21    time he chose to amend.  ECF Nos. 17, 36.  Before the court is plaintiff's third amended

22    complaint ("TAC") and request for screening of the TAC.  ECF Nos. 42, 43.[1]

23    I.      Statutory Screening of Prisoner Complaints

24          The court is required to screen complaints brought by prisoners seeking relief against "a

25    governmental entity or officer or employee of a governmental entity."  28 U.S.C. § 1915A(a).  A

26

27    [1]  Plaintiff also has a pending motion for preliminary injunctive relief and a request for ruling on
      the motion for preliminary injunction.  ECF Nos. 35, 39.  Those motions are resolved via
28    separate, concurrent order and findings and recommendations.

                                                   1

1   claim "is [legally] frivolous where it lacks an arguable basis either in law or in fact." Neitzke v.

2   Williams, 490 U.S. 319, 325 (1989). The court may dismiss a claim as frivolous if it is based on

3   an indisputably meritless legal theory or factual contentions that are baseless. Id. at 327. The

4   critical inquiry is whether a constitutional claim, however inartfully pleaded, has an arguable

5   legal and factual basis. Jackson v. Arizona, 885 F.2d 639, 640 (9th Cir. 1989), superseded by

6   statute on other grounds as stated in Lopez v. Smith, 203 F.3d 1122, 1130 (9th Cir. 2000).

7           In order to avoid dismissal for failure to state a claim a complaint must contain more than

8   "naked assertion[s]," "labels and conclusions," or "a formulaic recitation of the elements of a

9   cause of action." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555, 557 (2007). In other words,

10  "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory

11  statements, do not suffice." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). A claim upon which the

12  court can grant relief has facial plausibility. Twombly, 550 U.S. at 570. "A claim has facial

13  plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable

14  inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678 (citation

15  omitted). When considering whether a complaint states a claim, the court must accept the

16  allegations as true, Erickson v. Pardus, 551 U.S. 89, 94 (2007) (per curiam), and construe the

17  complaint in the light most favorable to the plaintiff, Jenkins v. McKeithen, 395 U.S. 411, 421

18  (1969) (citations omitted).

19      II.      Factual Allegations of the Third Amended Complaint

20          The TAC alleges that plaintiff, a 69-year-old DPW inmate, is a member of the Armstrong

21  and Plata protected classes[2] and that defendants Patterson, Dail, Rodriguez, Sandoval, Silva, and

22  California Medical Facility ("CMF") violated plaintiff's rights under the First, Fourth, Eighth,

23  and Fourteenth Amendments to the United States Constitution, 42 U.S.C. § 1985, the Americans

24  _____

25  [2] Armstrong involves a class of "all present and future California state prisoners . . . with
    mobility, sight, hearing, learning[,] and kidney disabilities that substantially limit one or more of
26  their major life activities" and held the California Department of Corrections and Rehabilitation
    ("CDCR") and the governor violated the Americans with Disability Act ("ADA") and the
27  Rehabilitation Act ("RA"). Armstrong v. Wilson, 124 F.3d 1019, 1020-21 (9th Cir. 1997). Plata
    v. Brown involves a class of prisoners with serious medical conditions. Brown v. Plata, 563 U.S.
28  493, 500, 507 (2011).

with Disabilities Act ("ADA"), Section 504 of the Rehabilitation Act ("RA"), the Tom Bane Civil Rights Act ("Tom Bane Act"), and California tort laws.  ECF No. 42 at 1-28.[3]  Specifically, the TAC alleges the following.

On August 13, 2023, defendant Rodriguez refused to honor a lay-in/chrono for cell feeding from plaintiff's prior facility, which resulted in plaintiff receiving inadequate nutrition for three days.  Id. at 15.  Between August 16, 2023, and May 31, 2024, plaintiff was granted temporary lay-in/chronos for cell-feeding.  Id.

At some point before April 26, 2024, defendant Patterson instituted a new blanket policy prohibiting cell feeding regardless of medical need.  Id. at 11-13.  On April 26, 2024, defendant Dail denied plaintiff's request to renew his cell-feeding chrono because of the new policy.  Id. at 11, 14.  Despite Dail's stated reason for the denial, and plaintiff's documented "severe mobility" issues, Dail falsely claimed plaintiff "does not meet medical necessity."  Id. at 13-14.  Dail also improperly ordered plaintiff to remove his KN-95 mask in the dining hall, despite being aware plaintiff contracted COVID-19 in 2022 due to CDCR negligence.  Id. at 14.   Dail's progress notes made other libelous/false claims in violation of CDCR HC DOM, Chpt. 1, sec.1.2.7, id. at 14.  Defendant Patterson also made libelous/false statements about plaintiff in her response to his grievance.  Id. at 12-13.

After the cell feeding chrono expired, and while plaintiff appealed the denial to renew the chrono, the kitchen continued to send food trays to plaintiff.  Id. at 15.  On June 15, 2024, defendant Sandoval blocked delivery of plaintiff's food trays.  Id. at 15-16.  Despite knowing plaintiff had been denied breakfast and lunch, defendant Rodriguez ordered the kitchen to stop sending food trays to plaintiff.  Id. at 15.  After this, Sandoval continued to block food, and on August 14, 2024, he entered plaintiff's cell and confiscated food that had been donated to him by

---

[3]  Although the TAC purports to present three claims—(1) Eighth Amendment, (2) 42 U.S.C. §1985, and (3) 42 U.S.C. § 12101(a)(1) & (a)(5)—plaintiff asserts various other claims.  See ECF No. 42 at 7 (Section 504 of RA), 11 (Tom Bane Act), 12 (libel), 14 (libel), 15-18 (intentional infliction of emotional distress ("IIED"), 17 (First Amendment retaliation and Fourth Amendment unlawful search), 18 (Fourteenth Amendment Equal Protection Clause).  Accordingly, the court addresses all factual allegations and asserted claims even if not clearly delineated as claim one, claim two, claim three, etc.

1    another prisoner.  Id.  On September 3, 2024, Rodriguez blocked another inmate from donating

2    his food tray to plaintiff.  Id.  To this day, Rodriguez continues to block any food from being

3    given to plaintiff.  Id.

4            On December 11, 2024, defendant Silva refused to allow plaintiff to take his dinner to his

5    cell.  Id. at 17.  Plaintiff refused to give up his food and explained it was his only meal of the day

6    and that he had a pending legal action on the food issue.  Id. at 17.  In response, Silva (1) told

7    plaintiff he could not leave until he gave up his food tray, (2) conducted a strip search, and (3)

8    ordered a drug test.  Id.  Plaintiff believes Silva conducted an unlawful search in retaliation for

9    plaintiff's legal action or grievance against Silva's supervisor, defendant Rodriguez, because the

10   strip search and the drug test were ordered after plaintiff told Silva about his pending litigation.

11   Id.

12           On January 6, 2025, defendant Silva ordered another correctional officer (non-defendant)

13   to stop plaintiff outside of the dining hall.  Id. at 18.  The other correctional officer (non-

14   defendant) searched plaintiff's wheelchair and body, and then a sergeant (non-defendant) issued a

15   general chrono that forever forbade plaintiff from taking any food from the dining hall, while

16   other inmates were allowed to do so.  Id.  "Defendant Silva's action exhibit disparate treatment

17   and a retaliatory tone to a protected inmate under Plata/Armstrong."  Id.  The actions of

18   defendants Rodriguez, Sandoval, and Silva have caused intentional infliction of emotional

19   distress.  Id. at 15-18.

20           Defendant Patterson's "policy itself is a conspiracy to deny food to qualified inmates" and

21   is evidence of invidiously discriminatory animus towards Armstrong/Plata/ADA protected class

22   members.  Id. at 23-24.  All named defendants participated in the conspiracy by complying with

23   Patterson's improper policy.  Id. at 23.  Their participation establishes a meeting of the minds and

24   their individual and collective acts to deprived plaintiff of equal protection under the laws that

25   were done in furtherance of the conspiracy to deprive plaintiff of adequate nutrition.  Id.  Their

26   motivation stems from their disdain for Armstrong/Plata/ADA protected inmates or plaintiff's

27   grievances or lawsuits against them.  Id.  Together they conspired to obstruct and deprive

28   plaintiff, a member of the Armstrong/Plata classes, of equal protection and privileges under the

1   law. Id. at 24.

2       Although meals are provided in the dining hall, DPW inmates only have access to a small

3   elevator, which only fits two wheelchairs at a time, that is located two football fields away from

4   plaintiff's unit. Id. at 10, 26. It takes up to ninety minutes to complete a meal in the dining hall,

5   which is problematic for plaintiff because of his incontinence issues. Id. at 26. By failing to

6   repair the elevators and instituting a blanket policy against cell-feeding, despite being aware of

7   the problem this created for disabled inmates like plaintiff, defendants Patterson and CMF denied

8   plaintiff meaningful access and a reasonable accommodation to access meals. Id. at 25-26, 80-82.

9       Plaintiff asserts that because of defendants' conduct he suffers from constant hunger,

10  fatigue, loss of sleep, increased stress and anxiety, panic attacks requiring medication, bowel

11  distress, vitamin D deficiency, an overall lower trend of lab bloodwork and unnecessary risk of

12  contracting serious disease. Id. at 19. Defendants Dail, Rodriguez, Sandoval, and Silva are sued

13  in their official and individual capacities. Id. at 15-18. Defendant Patterson is sued in both

14  capacities, except with respect to the ADA and/or RA claims, in which she is only sued in her

15  official capacity. Id. at 13, 25. By way of relief, plaintiff seeks monetary damages. Id. at 19-20.

16      III.    Claims for Which a Response Will Be Required

17      After conducting the screening required by 28 U.S.C. § 1915A(a), and drawing all

18  inferences in the plaintiff's favor, the court finds that plaintiff has adequately stated an Eighth

19  Amendment claim of deliberate indifference to plaintiff's nutritional needs against defendants

20  Patterson, Dail, Rodriguez, and Sandoval; ADA and RA claims against defendant CMF and

21  defendant Patterson in her official capacity;[4] and a First Amendment retaliation claim and Fourth

22

23  [4] Plaintiff's official capacity ADA and RA claims against defendant Patterson are redundant of
    his ADA and RA claims against defendant CMF. See Kentucky v. Graham, 473 U.S. 159, 165
24  (1985) ("Official-capacity suits . . . generally represent only another way of pleading an action
    against an entity of which an officer is an agent." (citation and internal quotation marks omitted)).
25  Plaintiff is informed that if he elects to proceed on the complaint as screened or restates his ADA
    and RA claims against both defendants in a fourth amended complaint, defendants may later seek
26  to dismiss these claims against defendant Patterson in her official capacity as redundant. See
    Center for Bio-Ethical Reform, Inc. v. Los Angeles Cty. Sheriff Dep't, 533 F.3d 780, 799 (9th
27  Cir. 2008) (when plaintiff names both an officer in his official capacity and the local government
    entity, "the court may dismiss the officer as a redundant defendant").
28

Amendment unlawful search claim against defendant Silva.

IV.     Failure to State a Claim

However, the allegations in the TAC are not sufficient to state the following: § 1983 claims against defendants Patterson, Dail, Rodriguez, Sandoval or Silva in their *official* capacities; an Eighth Amendment claim for deliberate indifference to plaintiff's nutritional needs against defendant Rodriguez based on conduct in August 2023; an Eighth Amendment claim for deliberate indifference to plaintiff's risk of contracting COVID-19 against defendant Dail; a Fourteenth Amendment conditions of confinement claim; a Fourteenth Amendment Equal Protection Clause claim against defendant Silva; conspiracy claims under 42 U.S.C. § 1985(2) and (3) against any defendant; and any state law claims.

A.  Official Capacity Claims

Plaintiff cannot state *official* capacity claims for damages under § 1983 against defendants Patterson, Dail, Rodriguez, Sandoval, and Silva because such claims are barred by sovereign immunity under the Eleventh Amendment.

B.  Eighth Amendment Claims

The allegations in the TAC are not sufficient to state an Eighth Amendment deliberate indifference claim against defendant Rodriguez for her conduct in August 2023 or against Silva. Plaintiff's allegations with respect to defendant Rodriguez's conduct in August 2023 are conclusory and provide no information from which the court can infer defendant Rodriguez deprived plaintiff of food adequate to maintain plaintiff's health.  Similarly, plaintiff's allegations that defendant Silva prevented him from taking food back to his cell twice in a one-month period does not establish a sufficiently serious deprivation.

The allegations are also insufficient to state an Eighth Amendment deliberate indifference claim against defendant Dail based on his instruction to plaintiff to remove his mask in dining hall to eat.  Although "COVID-19 poses a substantial risk of harm," plaintiff has not put forth allegations of defendant Dail's culpable state of mind to the risks posed by COVID-19.  See Martinez v. Sherman, No. 1:21-cv-1319 BAM (PC), 2022 WL 126054, at *6, 2022 U.S. Dist. LEXIS 7304, at *15-16 (E.D. Cal. Jan. 13, 2022) ("It is clear that COVID-19 poses a substantial

6

1  risk of serious harm," however, to state a claim plaintiff must allege that the defendant "acted

2  with indifference to the risks posed by COVID-19.") (collecting cases).  Plaintiff has not alleged

3  that the conditions in dining hall made it likely he would contract COVID-19 if he removed his

4  mask to eat, and that defendant Dail was aware of conditions that created this risk and nonetheless

5  instructed him to remove his mask.  See White v. Monroe Corr. Complex Special Offenders Unit,

6  No. 2:23-cv-1158 BHS BAT, 2023 WL 6626552, at *2, 2023 U.S. Dist. LEXIS 184017, at *6

7  (W.D. Wash. Sept. 11, 2023) (because plaintiff "offer[ed] no facts to indicate why the mask

8  mandate was put into effect, who put the mask mandate into effect, or that allowing the inmates to

9  eat meals in the dining hall without masks put plaintiff at serious risk of harm," he failed to allege

10  "defendant knew of and took actions in deliberate indifference to a serious risk of harm faced by

11  plaintiff").  Additionally, plaintiff's vague allegation that he previously contracted COVID-19 in

12  2022, at a different facility under different circumstances, does not provide a factual basis from

13  which the court can infer defendant Dail acted with deliberate indifference based on conditions in

14  the dining hall at CMF.

15            C.  Fourteenth Amendment Claims

16                  i.  Conditions of Confinement

17            The allegations in the TAC are also insufficient to state a claim under the Fourteenth

18  Amendment based on plaintiff's conditions of confinement.  A challenge to the conditions of

19  confinement brought by a person serving a criminal sentence is governed by the Eighth

20  Amendment, while a challenge to the condition of confinement of a pretrial detainee is governed

21  by the Fourteenth Amendment.  Because the Inmate Locator website operated by CDCR indicates

22  plaintiff is incarcerated and eligible for parole in October 2036,[5] his conditions of confinement

23  claims are subject to the Eighth Amendment.

24  ////

---

25  [5]  The court takes judicial notice of the information on CDCR's California Incarcerated Records
   and Information Search for inmate Paul David Carr, CDCR No. BE2251.  See Fed. R. Evid. 201
26  (court may take judicial notice of facts that are capable of accurate determination by sources
   whose accuracy cannot reasonably be questioned); see also City of Sausalito v. O'Neill, 386 F.3d
27  1186, 1224 n.2 (9th Cir. 2004) ("We may take judicial notice of a record of a state agency not
   subject to reasonable dispute.").
28

ii.  Equal Protection

To the extent plaintiff attempts to assert a Fourteenth Amendment equal protection claim against defendant Silva, such claim fails because "disabled" persons do not constitute a suspect class for equal protection purposes, and plaintiff assertion that other inmates were allowed to take food with permission from any staff member is insufficient to allege defendant Silva intentionally treated similarly situated individuals differently without a rational relationship to a legitimate governmental purpose.  Additionally, plaintiff's assertion that defendant Silva's actions exhibit disparate treatment to a protected inmate under Armstrong/Plata is conclusory and not one from which this court can infer defendant Silva's conduct was *motivated* by plaintiff's membership in either the Armstrong or Plata classes.

D.  42 U.S.C. § 1985 Conspiracies

Assuming without deciding that 42 U.S.C. section 1985(2) and/or 1985(3) claims may be based on class-based animus against individuals with disabilities, plaintiff has not alleged facts supporting a plausible inference that any of the six defendants conspired to deprive him of the equal protections of the laws, much less that such a conspiracy was based on class-based invidiously discriminatory animus due to his alleged disability or class membership.  Although, as discussed above, plaintiff's allegations are sufficient to state a retaliation claim against defendant Silva, there are no factual allegations from which the court can infer that defendant Silva and another defendant agreed to *use force, intimidation, or threats to deter* plaintiff from participating in this case or any other federal action.

Additionally, plaintiff's allegations that defendant Patterson's policy was a conspiracy to deny food to Plata, Armstrong, and/or ADA protected class members, that Patterson's actions exhibited invidiously discriminatory animus to Plata, Armstrong, and/or ADA protected class members, and that all named defendants complied with defendant Patterson's policy and therefore acted in furtherance of the conspiracy, are nothing more than conclusory statements and are insufficient to state a claim.  See Freeman v. Zilliox, No. EDCV 22-0097 DSF (AS), 2022 WL 2057740, at *7, 2022 U.S. Dist. LEXIS 104465, at *18 (C.D. Cal. Apr. 29, 2022) (allegations that plaintiff was Muslim and that defendants showed "religious animus" towards him with no

8

supporting facts are insufficient conclusory assertions that fail to state a claim under § 1985(3)). The last assertion also suggests that anytime an employee implements a policy, regardless of their motivation, they conspired to carry out the unlawful objective of the policy. However, mere allegations of a combined effort to implement a policy is insufficient to plausibly allege "an agreement" or "meeting of the minds" to violate plaintiff's constitutional rights. See O'Handley v. Padilla, 579 F. Supp. 1163, 1183-85 (N.D. Cal. 2022), aff'd sub nom. O'Handley v. Weber, 62 F.4th 1145 (9th Cir. 2023) (working together to contain misinformation "might demonstrate a meeting of the minds to promptly address election misinformation, but not a meeting of the minds to 'violate constitutional rights,' let alone [plaintiff's] constitutional rights."). Similarly, even if plaintiff had sufficiently alleged that Patterson acted with discriminatory motive based on his disability and/or membership in one of the classes he identified, her discriminatory motive is not enough to establish that any of the other five defendants' conduct was similarly motivated by discriminatory animus, much less based on the same classification. See Freeman v. Zilliox, 2022 WL 2057740, at *7, 2022 U.S. Dist. LEXIS 104465, at *17-18 (discriminatory motive by one defendant is not enough to plausibly show that the actions of other defendants were similarly motivated).[6]

E.  State Law Claims

Plaintiff's Tom Bane Act, libel, and intentional infliction of emotional distress state law claims are barred by the California Government Claims Act ("GCA"). Plaintiff claims that he should be excused from compliance because the GCA only applies to claims regarding failure to provide medical care, the Prison Litigation Reform Act, not the GCA applies to his claims, it would be an undue hardship to comply with the GCA because it would prolong suffering without an injunction, and plaintiff was unable to state the specific monetary amount for the claim because the deprivation is ongoing. ECF No. 42 at 11. These arguments fail.

Under the GCA, *no action for monetary relief*, not just actions for failure to provide

---

[6]  Moreover, even if plaintiff had stated a claim and later established a constitutional violation under § 1985, it appears defendants would likely be entitled to qualified immunity because it is not clearly established that a § 1985 conspiracy can arise from acts between agents of the same entity.

medical care, may be commenced against a public employee or entity unless a written claim was

timely presented (within six months after the challenged incident).  Also, while plaintiff's § 1983

claims for violations of *federal* rights require exhaustion under the PLRA, *state* law claims, such

as those for libel, intentional infliction of emotional distress, and under the Tom Bane Act, which

seek monetary damages, require presentation under the GCA.  To the extent plaintiff attempts to

argue violations of these state laws and/or violations of state regulations or CDCR HC DOM are

actionable under § 1983, he is mistaken.  To state a claim under § 1983, plaintiff must allege a

violation of a *federal* right.  Lastly, plaintiff's claim of undue hardship is negated by the

inapplicability of the GCA to claims seeking only injunctive relief and because plaintiff is only

required to state the damages at the time of the presentation of the claim and an *estimate* of any

prospective damages.

V.    Leave to Amend

Leave to amend should be granted if it appears possible that the defects in the complaint

could be corrected, especially if a plaintiff is pro se.  Lopez v. Smith, 203 F.3d 1122, 1130-31

(9th Cir. 2000) (en banc).  However, if, after careful consideration, it is clear that a complaint

cannot be cured by amendment, the court may dismiss without leave to amend.  Cato v. United

States, 70 F.3d 1103, 1105-06 (9th Cir. 1995).

The court finds, as set forth above, that portions of the complaint fail to state a claim upon

which relief may be granted.  Plaintiff has already been given two opportunities to amend the

complaint and advised what kind of information he needed to provide.  See ECF Nos. 12, 34.

However, the allegations in the TAC do not overcome all prior defects and reveal other

deficiencies.  Like the second amended complaint, plaintiff's discrimination and conspiracy

claims in the TAC continue to fail because they are nothing more than vague, conclusory

assertions with no *factual* basis of any discriminatory motive, and his state law claims in the TAC

continue to fail because he has not established compliance with the GCA.  The court has

previously instructed plaintiff on the requirements and the kinds of facts he needs to state

conspiracy, Fourteenth Amendment discrimination, and state law claims.  ECF No. 34 at 14, 17-

19.  He was unable to fix these defects.

1    Given the lack of additional facts regarding these claims and plaintiff's apparent non-

2    compliance with the GCA, it does not appear that further amendment as to those claims will result

3    in cognizable claims.  However, the undersigned will not recommend dismissal of those claims at

4    this time.  Rather, because it appears plaintiff may have unintentionally failed to list injunctive

5    relief as a form of relief he seeks in his TAC, as discussed in the separate order and findings and

6    recommendations regarding plaintiff motion for preliminary injunctive relief, he will be provided

7    the opportunity to file a Fourth Amended Complaint that adds injunctive relief.  Should plaintiff

8    also reassert his defective claims, the undersigned will recommend their dismissal for the reasons

9    stated above and in the last screening order.  See ECF No. 34 at 5-6.

10    VI.    Options from Which Plaintiff Must Choose

11    Based on the court's screening, plaintiff has a choice to make.  After selecting an option

12    from the two options listed below, plaintiff must return the attached Notice of Election form to

13    the court within 21 days from the date of this order.

14    The **first option** available to plaintiff is to proceed immediately on his Eighth Amendment

15    claims of deliberate indifference to his nutritional needs against defendants Patterson, Dail,

16    Rodriguez, and Sandoval; ADA and RA claims against defendant CMF and defendant Patterson

17    in her official capacity; and First Amendment retaliation and Fourth Amendment unlawful search

18    claims against defendant Silva.  **By choosing this option, plaintiff will be agreeing to**

19    **voluntarily dismiss the following claims: § 1983 claims against defendants Patterson, Dail,**

20    **Rodriguez, Sandoval or Silva in their *official* capacities; an Eighth Amendment claim for**

21    **deliberate indifference to plaintiff's nutritional needs against defendant Rodriguez based on**

22    **conduct in August 2023; an Eighth Amendment claim for deliberate indifference to**

23    **plaintiff's risk of contracting COVID-19 against defendant Dail; a Fourteenth Amendment**

24    **conditions of confinement claim; a Fourteenth Amendment Equal Protection Clause claim**

25    **against defendant Silva; conspiracy claims under 42 U.S.C. § 1985(2) and (3) against any**

26    **defendant; and any state law claims.**

27    The **second option** available to plaintiff is to file an amended complaint to fix the

28    problems described in Section IV and/or to add in a request for injunctive relief.  **If plaintiff**

11

**chooses this option, the court will set a deadline in a subsequent order to give plaintiff time to file an amended complaint.**

VII.     Plain Language Summary of this Order for Party Proceeding Without a Lawyer

Some of the allegations in the complaint state claims against the defendants and some do not.  You have stated First and Fourth Amendment claims against defendant Silva, ADA and RA claims against CMF and defendant Patterson in her official capacity, and Eighth Amendment individual capacity claims against defendants Patterson, Dr. Dail, Rodriguez, and Sandoval for depriving you of adequate nutrition.  You have not stated any other claims against these defendants for the conduct you have alleged.

You have a choice to make.  You may either (1) proceed immediately on your First and Fourth Amendment claims against defendant Silva, your ADA and RA claims against defendants CMF and Patterson, and your Eighth Amendment deliberate indifference to adequate nutrition claims against defendants Patterson, Dr. Dail, Rodriguez, and Sandoval and voluntarily dismiss the other claims; or (2) try to amend the complaint.

To decide whether to amend your complaint, the court has attached the relevant legal standards that may govern your claims for relief.  See Attachment A.  Pay particular attention to these standards if you choose to file an amended complaint.

VIII.    CONCLUSION

In accordance with the above, IT IS HEREBY ORDERED that:

1.   Plaintiff's allegations in the third amended complaint do not state § 1983 claims against defendants Patterson, Dail, Rodriguez, Sandoval or Silva in their *official* capacities; an Eighth Amendment claim for deliberate indifference to adequate nutrition against defendant Rodriguez based on defendant Rodriguez's conduct in August 2023; an Eighth Amendment claim for deliberate indifference to plaintiff's risk of contracting COVID-19 against defendant Dail; a Fourteenth Amendment conditions of confinement claim; a Fourteenth Amendment Equal Protection Clause claim against defendant Silva; conspiracy claims under 42 U.S.C. § 1985(2) and/or § 1985(3); and any state law claims.

2.   Plaintiff has the option to proceed immediately on his First and Fourth Amendment

1  claims against defendant Silva, ADA and RA claims against defendants CMF and Patterson, and

2  Eighth Amendment deliberate indifference to adequate nutrition claims against defendants

3  Patterson, Dail, Rodriguez, and Sandoval as set forth in Section III above, or to file an amended

4  complaint.

5      3.  Within 21 days from the date of this order, plaintiff shall complete and return the

6  attached Notice of Election form notifying the court whether he wants to proceed on the screened

7  complaint or whether he wants to file an amended complaint.

8      4.  If plaintiff does not return the form, the court will assume that he is choosing to

9  proceed on the complaint as screened and will recommend dismissal without prejudice of

10  plaintiff's § 1983 claims against defendants Patterson, Dail, Rodriguez, Sandoval or Silva in their

11  *official* capacities; Eighth Amendment claim for deliberate indifference to adequate nutrition

12  against defendant Rodriguez based on his conduct in August 2023; Eighth Amendment claim for

13  deliberate indifference to plaintiff's risk of contracting COVID-19 against defendant Dail;

14  Fourteenth Amendment conditions of confinement claim; Fourteenth Amendment Equal

15  Protection Clause claim against defendant Silva; conspiracy claims under 42 U.S.C. § 1985(2)

16  and (3) and state law claims against all defendants.

17  DATED: October 1, 2025

18  _____

19  ALLISON CLAIRE
    UNITED STATES MAGISTRATE JUDGE

20

21

22

23

24

25

26

27

28

1
2
3
4
5
6
7
8                    UNITED STATES DISTRICT COURT

9              FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11    PAUL DAVID CARR,                          No.  2:24-cv-1680 DJC AC P

12                    Plaintiff,

13          v.                                   NOTICE OF ELECTION

14    DANIEL E. CUEVA, et al.,

15                    Defendants.

16

17          Check one:

18    _____  Plaintiff wants to proceed immediately on his First and Fourth Amendment claims against

19          defendant Silva, ADA and RA claims against defendants CMF and Patterson, and Eighth

20          Amendment deliberate indifference to adequate nutrition claims against defendants

21          Patterson, Dail, Rodriguez, and Sandoval without amending the complaint.  Plaintiff

22          understands that by choosing this option, the remaining § 1983 claims against defendants

23          Patterson, Dail, Rodriguez, Sandoval or Silva in their official capacities; Eighth

24          Amendment claim for deliberate indifference to adequate nutrition against defendant

25          Rodriguez based on his conduct in August 2023; Eighth Amendment claim for deliberate

26          indifference to plaintiff's risk of contracting COVID-19 against defendant Dail;

27          Fourteenth Amendment conditions of confinement claim; Fourteenth Amendment Equal

28

                                              1

1    Protection Clause claim against defendant Silva; conspiracy claims under 42 U.S.C.

2    §§ 1985(2) and 1985(3) and state law claims will be voluntarily dismissed without

3    prejudice pursuant to Federal Rule of Civil Procedure 41(a).

4    _____ Plaintiff wants time to file an amended complaint.[7]

5

6    DATED:_____

7                                                    _____
                                                     Paul David Carr
8                                                    Plaintiff pro se

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27    _____

28    [7] If plaintiff chooses this option, the court will set a deadline in a *subsequent* order to give
      plaintiff time to file an amended complaint.

2

Attachment A

This Attachment provides, for informational purposes only, the legal standards that may apply to your claims for relief.  Pay particular attention to these standards if you choose to file an amended complaint.

I.   Legal Standards Governing Amended Complaints

If plaintiff chooses to file an amended complaint, he must demonstrate how the conditions about which he complains resulted in a deprivation of his constitutional rights.  Rizzo v. Goode, 423 U.S. 362, 370-71 (1976).  Also, the complaint must specifically identify how each named defendant is involved.  Arnold v. Int'l Bus. Machs. Corp., 637 F.2d 1350, 1355 (9th Cir. 1981). There can be no liability under 42 U.S.C. § 1983 unless there is some affirmative link or connection between a defendant's actions and the claimed deprivation.  Id.; Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978).  Furthermore, "[v]ague and conclusory allegations of official participation in civil rights violations are not sufficient."  Ivey v. Bd. of Regents, 673 F.2d 266, 268 (9th Cir. 1982) (citations omitted).

Plaintiff is also informed that the court cannot refer to a prior pleading in order to make his amended complaint complete.  See Local Rule 220.  This is because, as a general rule, an amended complaint replaces the prior complaint.  Loux v. Rhay, 375 F.2d 55, 57 (9th Cir. 1967) (citations omitted), overruled in part by Lacey v. Maricopa County, 693 F.3d 896, 928 (9th Cir. 2012).  Therefore, in an amended complaint, every claim and every defendant must be included.

II.  Legal Standards Governing Substantive Claims for Relief

A.  Section 1983

Section 1983 provides in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983.  Accordingly, "the requirements for relief under [§] 1983 have been articulated as: (1) *a violation of rights protected by the Constitution or created by federal statute,* (2)

1

1  proximately caused (3) by conduct of a 'person' (4) acting under color of state law." Crumpton v.

2  Gates, 947 F.2d 1418, 1420 (9th Cir. 1991) (emphasis added).

3       An officer's violation of state laws and/or regulations is not grounds for a § 1983 claim.

4  See Case v. Kitsap County Sheriff's Dept., 249 F.3d 921, 930 (9th Cir. 2001) (quoting Gardner v.

5  Howard, 109 F.3d 427, 430 (8th Cir 1997) ("[T]here is no § 1983 liability for violating prison

6  policy. [Plaintiff] must prove that [the official] violated his constitutional right . . .")).  Violations

7  of state law and regulations cannot be remedied under § 1983 unless they also violate a federal

8  constitutional or statutory right.  See Nurre v. Whitehead, 580 F.3d 1087, 1092 (9th Cir. 2009)

9  (section 1983 claims must be premised on violation of federal constitutional right); Sweaney v.

10  Ada Cty., Idaho, 119 F.3d 1385, 1391 (9th Cir. 1997) (section 1983 creates cause of action for

11  violation of federal law); Lovell v. Poway Unified Sch. Dist., 90 F.3d 367, 370 (9th Cir. 1996)

12  (federal and state law claims should not be conflated; "[t]o the extent that the violation of a state

13  law amounts the deprivation of a state-created interest that reaches beyond that guaranteed by the

14  federal Constitution, Section 1983 offers no redress").

15       B.  First Amendment Retaliation

16       To state a claim for retaliation, a plaintiff must allege defendants (1) took adverse action

17  against plaintiff (2) because of (3) plaintiff's protected conduct, and that the action (4) would chill

18  an inmate of reasonable firmness from future protected conduct and (5) lacked a legitimate

19  correctional goal.  Rhodes v. Robinson, 408 F.3d 559, 567-68 (9th Cir. 2005).

20       An adverse action is an act (or failure to act) by prison officials which causes harm, and

21  "the mere *threat* of harm can be an adverse action, regardless of whether it is carried out."

22  Brodheim v. Cry, 584 F.3d 1262, 1269-70 (9th Cir. 2009) (emphasis in original).  To show

23  defendants retaliated "because of" the plaintiff's actions, the plaintiff must show the defendants

24  were motivated by his protected conduct.  See Crawford-El v. Britton, 523 U.S. 574, 592 (1998)

25  (proof of defendant's general animosity toward plaintiff would not necessarily show her conduct

26  was motivated by plaintiff's protected conduct).  Protected conduct refers to acts taken by the

27  plaintiff that are protected by the First Amendment and may include lawsuits and grievances, as

28  well as verbal complaints or threats to sue.  See Rhodes, 408 F.3d at 567 (prisoners have a First

1    Amendment right to file prison grievances and pursue civil litigation); Shepard v. Quillen, 840

2    F.3d 686, 688 (9th Cir. 2016) (prisoners have "First Amendment right to report staff

3    misconduct"); Jones v. Williams, 791 F.3d 1023, 1036 (9th Cir. 2015) (threats to sue constitute

4    protected conduct); Entler v. Gregoire, 872 F.3d 1031, 1039 (9th Cir. 2017) (form of complaint,

5    including verbal, "is of no constitutional significance").

6    　　　　　　　　C.  Fourth Amendment Unlawful Searches

7    　　　　The Fourth Amendment's right against unreasonable searches "extends to incarcerated

8    prisoners; however, the reasonableness of a particular search is determined by reference to the

9    prison context."  Michenfelder v. Sumner, 860 F.2d 328, 332 (9th Cir. 1988).  To determine the

10   reasonableness of a search, courts must consider "(1) the scope of the particular intrusion, (2) the

11   manner in which it is conducted, (3) the justification for initiating it, and (4) the place in which it

12   is conducted."  Byrd v. Maricopa Cnty. Sheriff's Dep't, 629 F.3d 1135, 1141 (9th Cir. 2011)

13   (quoting Bell v. Wolfish, 441 U.S. 520, 559 (1979) (internal quotations omitted)).  This test

14   "requires a balancing of the need for the particular search against the invasion of personal rights

15   that the search entails."  Bell, 441 U.S. at 559.  Searches done for the purpose of harassment are

16   not constitutionally valid—the Supreme Court has held that "intentional harassment of even the

17   most hardened criminals cannot be tolerated."  Hudson v. Palmer, 468 U.S. 517, 528 (1984).

18   　　　　　　　　D.  Eighth Amendment Conditions of Confinement

19   　　　　Challenges to conditions of confinement by a person serving a criminal sentence are

20   subject to the Eighth Amendment, while challenges to conditions of confinement by pretrial

21   detainees are subject to the Fourteenth Amendment.  Rhodes v. Chapman, 452 U.S. 337, 344-347

22   (1981) (Eighth Amendment); Kingsley v. Hendrickson, 576 U.S. 389, 400 (2015) (Fourteenth

23   Amendment).

24   　　　　"The Constitution does not mandate comfortable prisons, but neither does it permit

25   inhumane ones."  Farmer v. Brennan, 511 U.S. 825, 832 (1994) (internal quotation marks and

26   citation omitted).  "[A] prison official violates the Eighth Amendment only when two

27   requirements are met."  Id. at 834.

28   　　　　"First, the deprivation alleged must be, objectively, 'sufficiently serious.'"  Id. (quoting

3

1  Wilson v. Seiter, 501 U.S. 294, 298 (1991)).  To be sufficiently serious, "a prison official's act or

2  omission must result in the denial of 'the minimal civilized measure of life's necessities.'"  Id.

3  (quoting Rhodes v. Chapman, 452 U.S. 337, 347 (1981)).  "[R]outine discomfort inherent in the

4  prison setting" does not rise to the level of a constitutional violation.  Johnson v. Lewis, 217 F.3d

5  726, 732 (9th Cir. 2000).  Rather, "extreme deprivations are required to make out a[n] [Eighth

6  Amendment] conditions-of-confinement claim."  Hudson v. McMillian, 503 U.S. 1, 9 (1992).

7  "More modest deprivations can also form the objective basis of a violation, but only if such

8  deprivations are lengthy or ongoing."  Johnson, 217 F.3d at 732.

9  Second, the prison official must subjectively have a "sufficiently culpable state of mind,"

10  "one of 'deliberate indifference' to inmate health or safety."  Farmer, 511 U.S. at 834 (citations

11  omitted).  "[T]he official must both be aware of facts from which the inference could be drawn

12  that a substantial risk of serious harm exists, and he must also draw the inference."  Id. at 837.  He

13  must then fail to take reasonable measures to lessen the substantial risk of serious harm.  Id. at

14  847.  If a prison official's response to a known risk is reasonable, they "cannot be found liable."

15  Id. at 845.  Negligent failure to protect an inmate from harm is not actionable under § 1983.  Id. at

16  835.

17  "Adequate food is a basic human need protected by the Eighth Amendment."  Kennan v.

18  Hall, 83 F.3d 1083, 1091 (9th Cir. 1996), amended, 135 F.3d 1318 (9th Cir. 1998).  Denial of

19  food service presents a sufficiently serious condition to meet the objective prong of the Eighth

20  Amendment deliberate indifference analysis.  Foster v. Runnels, 554 F.3d 807, 812-13, n.2 (9th

21  Cir. 2009) (denial of 16 meals over 23 period is sufficiently serious but denial of 2 meals over 9-

22  week period was not sufficiently serious to meet the objective prong of the Eighth Amendment);

23  see also LeMaire v. Maass, 12 F.3d 1444, 1456 (9th Cir. 1993) ("The Eighth Amendment

24  requires only that prisoners receive food that is adequate to maintain health.").  Prison officials

25  may withhold food service for legitimate penological purposes.  Foster, 554 F.3d at 813-814.

26  E.  Fourteenth Amendment Equal Protection Clause

27  The Fourteenth Amendment's Equal Protection Clause requires the State to treat all

28  similarly situated people equally.  City of Cleburne v. Cleburne Living Ctr., 473 U.S. 432, 439

4

1   (1985) (citation omitted).  "To state a claim for violation of the Equal Protection Clause, a

2   plaintiff must show that the defendant acted with an intent or purpose to discriminate against him

3   based upon his membership in a protected class." Serrano v. Francis, 345 F.3d 1071, 1082 (9th

4   Cir. 2003) (citing Barren v. Harrington, 152 F.3d 1193, 1194 (9th Cir. 1998)).  Alternatively, a

5   plaintiff may state an equal protection claim if he shows similarly situated individuals were

6   intentionally treated differently without a rational relationship to a legitimate government

7   purpose.  Vill. of Willowbrook v. Olech, 528 U.S. 562, 564 (2000) (citations omitted).

8           "'[T]he disabled do not constitute a suspect class' for equal protection purposes," Lee v.

9   City of Los Angeles, 250 F.3d 668, 687 (9th Cir. 2001) (quoting Does 1-5 v. Chandler, 83 F.3d

10  1150, 1155 (9th Cir. 1996)).

11          F.   Americans with Disabilities Act ("ADA") and Rehabilitation Act ("RA")

12          "The ADA contains five titles: Employment (Title I), Public Services (Title II), Public

13  Accommodations and Services Operated by Private Entities (Title III), Telecommunications

14  (Title IV), and Miscellaneous Provisions (Title V)." See Americans with Disability Act of 1990,

15  Pub.L. No. 101-336, 104 Stat. 327, 327-28 (1990).  Title II of the ADA and the RA apply to

16  inmates within state prisons.  Pennsylvania Dept. of Corrections v. Yeskey, 524 U.S. 206 (1998).

17  To state a claim for violation of Title II of the ADA, a plaintiff must allege four elements:

18          (1) [H]e is an individual with a disability; (2) he is otherwise
            qualified to participate in or receive the benefit of some public
19          entity's services, programs, or activities; (3) he was either excluded
            from participation in or denied the benefits of the public entity's
20          services, programs, or activities, or was otherwise discriminated
            against by the public entity; and (4) such exclusion, denial of
21          benefits, or discrimination was by reason of [his] disability.

22  O'Guinn v. Lovelock Corr. Ctr., 502 F.3d 1056, 1060 (9th Cir. 2007); see also Thompson v.

23  Davis, 295 F.3d 890, 895 (9th Cir. 2002); Duvall v. County of Kitsap, 260 F.3d 1124 (9th Cir.

24  2001).

25          While the RA has the additional requirement that the program or activity receive federal

26  funds, 29 U.S.C. § 794, "[t]here is no significant difference in analysis of the rights and

27  obligations created by the ADA and the Rehabilitation Act.  Thus, courts have applied the same

28  analysis to claims brought under both statutes," Zukle v. Regents of the Univ. of Cal., 166 F.3d

1    1041, 1045 n.11 (9th Cir. 1999) (internal citations omitted).

2         "A plaintiff can allege disability discrimination in the provision of inmate services,

3    programs, or activities under the ADA or the Rehabilitation Act by pleading either (1)

4    discrimination based on disparate treatment or impact, or (2) denial of reasonable modifications

5    or accommodations." Cravotta v. County of Sacramento, 717 F. Supp. 3d 941, 956 (E.D. Cal.

6    2024); see Dunlap v. Ass'n of Bay Area Gov'ts, 996 F. Supp. 962, 965 (N.D. Cal. 1998) ("[T]he

7    ADA not only protects against disparate treatment, it also creates an affirmative duty in some

8    circumstances to provide special, preferred treatment, or 'reasonable accommodation.'").  To

9    support such a disparate impact claim, a plaintiff must demonstrate that the policy has the "effect

10   of denying meaningful access to public services." K.M. ex rel. Bright v. Tustin Unified Sch.

11   Dist., 725 F.3d 1088, 1102 (9th Cir. 2013).  Although § 12132 does not expressly provide for

12   reasonable accommodations, the implementing regulations provide that "[a] public entity shall

13   make reasonable modifications in policies, practices, or procedures when the modifications are

14   necessary to avoid discrimination on the basis of disability, unless the public entity can

15   demonstrate that making the modifications would fundamentally alter the nature of the service,

16   program, or activity."  28 C.F.R. § 35.130(b)(7)(i); see also Pierce v. County of Orange, 526 F.3d

17   1190, 1215 (9th Cir. 2008).

18        "[I]nsofar as Title II [of the ADA] creates a private cause of action for damages against

19   the States for conduct that *actually* violates the Fourteenth Amendment, Title II validly abrogates

20   state sovereign immunity." United States v. Georgia, 546 U.S. 151, 159 (2006) (emphasis in

21   original).  The RA abrogates state sovereign immunity.  See 42 U.S.C. § 2000d-7(a).

22        The proper defendant in an ADA and/or RA action is the public entity responsible for the

23   alleged discrimination.  See United States v. Georgia, 546 U.S. 151, 153 (2006) (ADA).  State

24   correctional facilities are "public entities" within the meaning of the ADA and RA.  See 42

25   U.S.C. § 12131(1)(A) & (B); Penn. Dept. of Corrs. v. Yeskey, 524 U.S. 206, 210 (1998);

26   Armstrong v. Wilson, 124 F.3d 1019, 1023-25 (9th Cir. 1997).  ADA and RA claims may not be

27   brought against state officials in their individual capacities.  Stewart v. Unknown Parties, 483 F.

28   App'x 374, 374 (9th Cir. 2012) (citing Lovell v. Chandler, 303 F.3d 1039, 1052 (9th Cir.

1  2002)); <u>Garcia v. S.U.N.Y. Health Scis. Ctr. of Brooklyn</u>, 280 F.3d 98, 107 (2d Cir. 2001)

2  ("[N]either Title II of the ADA nor § 504 of the Rehabilitation Act provides for individual

3  capacity suits against state officials." (citations omitted)).

4       Compensatory damages are available under the ADA and/or the RA when plaintiff

5  demonstrates that the discrimination he experienced was the result of deliberate indifference,

6  which "requires both knowledge that a harm to a federally protected right is substantially likely,

7  and a failure to act upon that the likelihood." <u>Duvall</u>, 260 F.3d at 1138-39 (citations omitted).

8  "When the plaintiff has alerted the public entity to his need for accommodation . . ., the public

9  entity is on notice that an accommodation is required, and the plaintiff has satisfied the first

10  element of the deliberate indifference test." <u>Id.</u> at 1139. "[I]n order to meet the second element

11  of the deliberate indifference test, a failure to act must be a result of conduct that is more than

12  negligent, and involves an element of deliberateness." <u>Id.</u> (citations omitted).

13       G.  <u>Tom Bane Civil Rights Act</u>

14       The Tom Bane Civil Rights Act ("Bane Act"), codified at California Civil Code § 52.1,

15  protects individuals from interference with federal or state rights by creating a cause of action for

16  such interference that is carried out "by threats, intimidation or coercion." <u>See</u> <u>Venegas v.</u>

17  <u>County of Los Angeles</u>, 153 Cal.App.4th 1230, 63 Cal.Rptr.3d 741 (2007); <u>Chaudhry v. City of</u>

18  <u>Los Angeles</u>, 751 F.3d 1096, 1105 (9th Cir. 2014). Claims under the Bane Act may be brought

19  against public officials who are alleged to interfere with protected rights, and qualified immunity

20  is not available for those claims. <u>Venegas</u>, 63 Cal.Rptr.3d at 753. The Bane Act requires a

21  specific intent to violate the plaintiff's rights. <u>Reese v. County of Sacramento</u>, 888 F.3d 1030,

22  1043 (9th Cir. 2018).

23       H.  <u>State Laws</u>

24       Under the California Government Claims Act, no action for damages may be commenced

25  against a public employee or entity unless a written claim was timely presented (within six

26  months after the challenged incident) and acted upon before filing suit. <u>See</u> Cal. Govt. Code

27  §§ 905, 945.4, 950.2. To state a viable state law claim against a state employee or entity, a

28  plaintiff must allege compliance with the Government Claims Act. <u>See</u> <u>State v. Superior Court</u>

1  (Bodde), 32 Cal. 4th 1234, 1237 (2004) (for claims against the state, timely presentation of a

2  claim under the Government Claims Act is an element of the cause of action and must be pled in

3  the complaint); Cal. Gov't Code §§ 900.6, 905, 945.4, 950.2.  This requirement applies in federal

4  court.  See Clapp v. City and County of San Francisco, 846 F. App'x 525, 526 (9th Cir. 2021)

5  (affirming dismissal where plaintiff "failed to allege facts sufficient to show that he complied

6  with, or was excused from, the claim presentment requirement of the California Government

7  Claims Act" (citation omitted)).

8         To present a claim under the California Government Claims Act, the claimant must

9  include

10              the amount claimed if the totals less than ten thousand dollars
              ($10,000) as of the date of presentation of the claim, including the
11              *estimated amount* of any prospective injury, damage, or loss, *insofar*
              *as it may be known at the time of the presentation of the claim*,
12              together with the basis of computation of the amount claims.  *If the*
              *amount claimed exceeds ten thousand dollars ($10,000), no dollar*
13              *amount shall be included in the claim.*  However, it shall indicate
              whether the claim would be a limited civil case."

14

15  Cal. Gov. Code § 910(f) (emphasis added).  The GCA is immaterial and inapplicable to claims

16  that seek only injunctive and declaratory relief.  See Butcher v. City of Marysville, 398 F. Supp.

17  3d 715, 730 (E.D. Cal. 2019).

18         I.    42 U.S.C. § 1985 (Conspiracies)

19         Section 1985(2) contains two causes of action.  "The first clause of section 1985(2)

20  concerns conspiracy to obstruct justice in federal courts, or to intimidate a party, witness or juror

21  in connection therewith."  Bretz v. Kelman, 773 F.2d 1026, 1027 n.3 (9th Cir. 1985).  The second

22  clause provides,

23              if two or more persons conspire for the purpose of impeding,
              hindering, obstructing, or defeating, in any manner, the due course
24              of justice in any State or Territory, with intent to deny to any citizen
              the equal protections of the laws, or to injure him or his property for
25              lawfully enforcing, or attempting to enforce, the right of any person,
              or class of persons, to the equal protection of the laws[.]
26

27  Id.; 42 U.S.C. § 1985(2).  To state a claim under the second clause, "class-based animus is

28  required."  Bretz, 773 F.2d at 1028.

8

1    To state a cause of action under § 1985(3), a complaint must allege (1) a conspiracy, (2) to

2    deprive any person or class of persons of the equal protection of the laws, or of equal privileges

3    and immunities under the laws, (3) an act by one of the conspirators in furtherance of the

4    conspiracy, and (4) a personal injury, property damage or a deprivation of any right or privilege

5    of a citizen of the United States.  Gillespie v. Civiletti, 629 F.2d 637, 641 (9th Cir. 1980) (citing

6    Griffin v. Breckenridge, 403 U.S. 88, 102–03 (1971)).  As with the second clause of § 1985(2),

7    for a § 1985(3) claim, "there must be some racial, or perhaps otherwise class-based, invidiously

8    discriminatory animus behind the conspirators' action." Griffin, 403 U.S. at 102; Cassettari v.

9    Nevada County, Cal., 824 F.2d 735, 739-40 (9th Cir. 1987) (a required element of a section 1985

10   claim is "that the defendants were 'motivated by a class-based, invidiously discriminatory

11   animus").

12       To state a claim under § 1985(3) for a non-race-based class, the Ninth Circuit requires

13   "'either that the courts have designated the class in question a suspect or quasi-suspect

14   classification requiring more exacting scrutiny or that Congress has indicated through legislation

15   that the class required special protection.'"  Sever v. Alaska Pulp Corp., 978 F.2d 1529, 1536 (9th

16   Cir. 1992) (quoting Schultz v. Sundberg, 759 F.2d 714, 718 (9th Cir. 1985)).  The Ninth Circuit

17   requires a plaintiff alleging a conspiracy to violate civil rights to "state specific facts to support

18   the existence of the claimed conspiracy."  Olsen v. Idaho State Bd. of Med., 363 F.3d 916, 929

19   (9th Cir. 2004) (citation and internal quotation marks omitted); Caldeira, 866 F.2d at 1181 ("the

20   plaintiff must show an agreement or 'meeting of the minds' by the defendants to violate his

21   constitutional rights").

22       J.   Qualified Immunity

23       The doctrine of qualified immunity "protects government officials from 'liability for civil

24   damages insofar as their conduct does not violate clearly established statutory or constitutional

25   rights of which a reasonable person would have known.'"  Tibbetts v. Kulongoski, 567 F.3d 529,

26   535 (9th Cir. 2009) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)).  The qualified

27   immunity analysis involves two parts, determining whether (1) whether the facts that a plaintiff

28   has alleged or shown make out a violation of a constitutional right; and (2) whether the right at

9

1    issue was clearly established at the time of the defendant's alleged misconduct.  Saucier, 533 U.S.

2    194, 201 (2001); see Pearson v. Callahan, 555 U.S. 223, 232, 236 (2009); see also Bull, 595 F.3d

3    at 971.  A right is clearly established only if "it would be clear to a reasonable officer that his

4    conduct was unlawful in the situation he confronted."  Saucier, 533 U.S. at 202; Norwood v.

5    Vance, 591 F.3d 1062, 1068 (9th Cir. 2010).  These prongs need not be addressed in any

6    particular order.  Pearson, 555 U.S. at 236.

7    "[C]ourts are divided as to whether or not a § 1985(3) conspiracy can arise from official

8    discussions between or among agents of the same entity."  Ziglar v. Abbasi, 582 U.S. 120, 154

9    (2017); see also Fazaga v. Federal Bureau of Investigation, 965 F.3d 1015, 1060 (9th Cir. 2020)

10   (Agent defendants were entitled to qualified immunity because at the time they "entered into or

11   agreed-upon policies devised with other employees of the FBI . . . neither this court nor the

12   Supreme Court had held that an intracorporate agreement could subject federal officials to

13   liability under § 1985(3), and the circuits that had decided the issue were split."), reversed and

14   remanded on other grounds, Federal Bureau of Investigation v. Fazaga, 595 U.S. 344 (2022).

15

16

17

18

19

20

21

22

23

24

25

26

27

28

ATTACHMENT A