UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PAUL DAVID CARR, | No. 2:24-cv-01680 DJC AC P |
| Plaintiff, | |
| v. | ORDER AND FINDINGS AND RECOMMENDATIONS |
| DANIEL E. CUEVA, et al., | |
| Defendants. | |

Plaintiff is a state prisoner who filed this civil rights action pursuant to 42 U.S.C. § 1983 without a lawyer. This matter was referred to a United States Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 302. Before the court is plaintiff's third motion for a preliminary injunction and/or temporary restraining order and for ruling on the motion. ECF Nos. 35, 39. For the reasons stated below, the court grants the motion for ruling and recommends the motion for a preliminary injunction and/or temporary restraining order be denied.

I.    Background

Plaintiff has filed three motions for preliminary injunctive relief in this case. ECF No. 6, 21, 35. The first was denied because plaintiff's complaint did not state cognizable claims against the person it sought to enjoin and because plaintiff failed to provide evidence to substantiate his allegations. ECF Nos. 11, 22. The second was denied because plaintiff had not yet filed an amended complaint stating cognizable claims against any person or entity he sought to enjoin and

because the new facts alleged were insufficient to carry his burden of establishing irreparable harm. ECF Nos. 27, 38. The third was concurrently filed with a notice of election, informing the court that plaintiff intended to file a third amended complaint ("TAC"). ECF Nos. 34-36. Given plaintiff's intent to file a TAC, and the uncertainty of whether the court would find plaintiff stated cognizable claims and against whom, the undersigned deferred ruling on the motion until plaintiff filed and the court screened the TAC. ECF No. 37.

Plaintiff filed a TAC and motions for ruling on the TAC and motion for preliminary injunctive relief. ECF Nos. 39, 42, 43. The TAC alleges that plaintiff, a 69-year-old DPW inmate, is a member of the Armstrong[1] and Plata[2] protected classes and that defendants Patterson, Dail, Rodriguez, Sandoval, Silva, and California Medical Facility ("CMF") violated plaintiff's rights under the First, Fourth, Eighth, and Fourteenth Amendments to the United States Constitution, 42 U.S.C. § 1985, the Americans with Disabilities Act ("ADA"), Section 504 of the Rehabilitation Act ("RA"), the Tom Bane Civil Rights Act ("Tom Bane Act"), and California tort laws. ECF No. 42 at 1-28.[3] By way of relief, plaintiff seeks monetary damages. Id. at 19.

In screening the complaint by separate order, which is filed concurrently with these findings and recommendations, the undersigned found that plaintiff has adequately stated Eighth Amendment claims of deliberate indifference to plaintiff's nutritional needs against defendants Patterson, Dail, Rodriguez, and Sandoval; ADA and RA claims against defendant CMF and Patterson in her official capacity; and a First Amendment retaliation claim and a Fourth

---

[1] In Armstrong v. Wilson, 124 F.3d 1019, 1020-21 (9th Cir. 1997), a district court certified a class of "all present and future California state prisoners . . . with mobility, sight, hearing, learning[,] and kidney disabilities that substantially limit one or more of their major life activities" and held the California Department of Corrections and Rehabilitation ("CDCR") and the governor violated the Americans with Disability Act ("ADA") and the Rehabilitation Act ("RA").

[2] Plata v. Brown involves a class of prisoners with serious medical conditions. Brown v. Plata, 563 U.S. 493, 500, 507 (2011).

[3] Although the TAC purports to present three claims—(1) Eighth Amendment, (2) 42 U.S.C. §1985, and (3) 42 U.S.C. § 12101(a)(1) & (a)(5)—plaintiff asserts various other claims in the body of the TAC. See ECF No. 42 at 7 (Section 504 of RA), 11 (Tom Bane Act), 12 (libel), 14 (libel), 15-18 (intentional infliction of emotional distress ("IIED"), 17 (First Amendment retaliation and Fourth Amendment unlawful search), 18 (Fourteenth Amendment Equal Protection Clause).

Amendment unlawful search claim against defendant Silva. Plaintiff, however, has not stated § 1983 claims against defendants Patterson, Dail, Rodriguez, Sandoval, and Silva in their *official* capacities; an Eighth Amendment claim for deliberate indifference to plaintiff's nutritional needs against defendant Rodriguez based on conduct in August 2023; an Eighth Amendment claim for deliberate indifference to plaintiff's risk of contracting COVID-19 against defendant Dail; a Fourteenth Amendment conditions of confinement claim; a Fourteenth Amendment Equal Protection Clause claim against defendant Silva; conspiracy claims under 42 U.S.C. §§ 1985(2) and 1985(3); and any state law claims. Because plaintiff may be able to fix some of the issues identified, and because it appears plaintiff that seeks injunctive relief but failed to request injunctive relief in the TAC, plaintiff has been offered another opportunity to amend the complaint.

II.     Plaintiff's Third Motion for Preliminary Injunctive Relief

Plaintiff's third motion for preliminary injunctive relief seeks an order requiring defendant Patterson to restore plaintiff's cell-feed chrono[4] for 180 days. ECF No. 35 at 4. Plaintiff argues that he has stated a cognizable Eighth Amendment claim for deliberate indifference to plaintiff's nutritional needs against defendant Patterson, id. at 3-4; the motion establishes plaintiff had a prior cell-feed regimen, plaintiff suffers from serious medical conditions, the lack of a cell-feed regimen caused him to suffer anemia, vitamin D deficiency, and stress, anxiety, and sleep issues, id. at 2; requiring him to eat his food in the dining hall exposes him to risk of contracting COVID-19, id. at 3; and that his right to protect his health outweighs any interests CMF may have in denying him a cell-feed regimen or refusing to let him take food back to his cell. Id. Plaintiff asserts a preliminary injunction would "re-establish the status quo of his cell-feed regimen." Id.

---

[4] The California Correctional Health Care Services ("CCHCS") Health Care Department Operations Manual ("HCDOM") provides definitions for the terms permanent and temporary chronos as used within CDCR. Health Care Department Operations Manual, Definitions, CALIFORNIA CORRECTIONAL HEALTH CARE SERVICES, https://www.cdcr.ca.gov/hcdom/dom/health-care-definitions/. The court takes judicial notice of these definitions. See Fed. R. Evid. 201 (court may take judicial notice of facts that are capable of accurate determination by sources whose accuracy cannot reasonably be questioned); see also City of Sausalito v. O'Neill, 386 F.3d 1186, 1224 n.2 (9th Cir. 2004) ("We may take judicial notice of a record of a state agency not subject to reasonable dispute.").

at 4. In support, plaintiff attaches several documents. Id. at 8-38.

III. Legal Standard

A temporary restraining order is an extraordinary measure of relief that a federal court may impose without notice to the adverse party if, in an affidavit or verified complaint, the movant "clearly show[s] that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition." Fed. R. Civ. P. 65(b)(1)(A). The purpose in issuing a temporary restraining order is to preserve the status quo pending a fuller hearing and the standard for issuing a temporary restraining order is essentially the same as that for issuing a preliminary injunction. Stuhlbarg Int'l Sales Co. v. John D. Brush & Co., 240 F.3d 832, 839 n.7 (9th Cir. 2001) (stating that the analysis for temporary restraining orders and preliminary injunctions is "substantially identical").

"The proper legal standard for preliminary injunctive relief requires a party to demonstrate '[1] that he is likely to succeed on the merits, [2] that he is likely to suffer irreparable harm in the absence of preliminary relief, [3] that the balance of equities tips in his favor, and [4] that an injunction is in the public interest.'" Stormans, Inc. v. Selecky, 586 F.3d 1109, 1127 (9th Cir. 2009) (citing Winter v. Nat. Res. Def. Council, Inc., 555 U.S. 7, 22 (2008)) (internal quotations omitted). The Ninth Circuit's sliding-scale test for a preliminary injunction has been incorporated into the Supreme Court's four-part Winter standard. Alliance for the Wild Rockies v. Cottrell, 632 F.3d 1127, 1131 (9th Cir. 2011) (explaining that the sliding scale approach allowed a stronger showing of one element to offset a weaker showing of another element). "In other words, 'serious questions going to the merits' and a hardship balance that tips sharply toward the plaintiff can support issuance of an injunction, assuming the other two elements of the Winter test are also met." Id. at 1132.

The plaintiff, as the moving party, bears the burden of establishing the merits of his or her claims. See Winter, 555 U.S. at 20. Additionally, "[t]hose seeking injunctive relief must proffer evidence sufficient to establish a likelihood of irreparable harm." Herb Reed Enterprises, LLC v. Fla. Ent. Mgmt., Inc., 736 F.3d 1239, 1251 (9th Cir. 2013).

Because the function of a preliminary injunction and temporary restraining order is to

preserve the status quo pending a determination on the merits, Chalk v. United States Dist. Court, 840 F.2d 701, 704 (9th Cir. 1988), there is heightened scrutiny where the movant seeks to *alter* rather than maintain the status quo, Dahl v. HEM Pharms. Corp., 7 F.3d 1399, 1403 (9th Cir. 1993) (holding that mandatory, as opposed to prohibitory, injunctions are "subject to heightened scrutiny and should not be issued unless the facts and law clearly favor the moving party"). "In general, mandatory injunctions 'are not granted unless extreme or very serious damage will result and are not issued in doubtful cases or where the injury complained of is capable of compensation in damages.'" Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co., 571 F.3d 873, 879 (9th Cir. 2009) (quoting Anderson v. United States, 612 F.2d 1112, 1115 (9th Cir. 1979)). Additionally, in cases brought by prisoners involving conditions of confinement, any preliminary injunction "must be narrowly drawn, extend no further than necessary to correct the harm the court finds requires preliminary relief, and be the least intrusive means necessary to correct that harm." 18 U.S.C. § 3626(a)(2).

IV.  Discussion

    A.  The Court Lacks Authority to Grant Preliminary Injunctive Relief

Courts in the Ninth Circuit have authority to grant relief requested in a motion for a preliminary injunction if there is "a sufficient nexus between the claims raised in a motion for injunctive relief and the claims set forth in the underlying complaint itself." Pac. Radiation Oncology, LLC, v. Queen's Med. Ctr., 810 F.3d 631 (9th Cir. 2015). The nexus between the two is "sufficiently strong where the preliminary injunction would grant 'relief of the same character as that which may be granted finally.'" Id. (quoting De Beers Consol. Mines v. United States, 325 U.S. 212, 220 (1945)). District courts including this court have interpreted Pacific Radiation Oncology to restrict the court's authority to grant preliminary injunctive relief in cases where the operative complaint does not seek injunctive relief. See Int'l Tech. Univ. Found. V. WASC Senior Coll. & Univ. Comm'n, No. 22-cv-4576 BLF, 2023 WL 2621344, at *2, 2023 U.S. Dist. LEXIS 49622, at *7 (N.D. Cal. Mar. 23, 2023) (the court lacks authority to issue preliminary injunctive relief because the complaint only seeks damages); Manago v. Santoro, No. 1:21-cv-1464 HBK, 2022 WL 1126744, 2022 U.S. Dist. LEXIS 70331, at *10 (E.D. Cal. Apr. 15, 2022)

(the motion for preliminary injunction is "facially deficient" because plaintiff "does not seek injunctive relief in his Complaint"), report and recommendation adopted, 2022 WL 2791824 (E.D. Cal. July 15, 2022); Obataiye-Allah v. Prins, No. 2:19-cv-1579 JR, 2021 WL 982611, at *2, 2021 U.S. Dist. LEXIS 49205, at *5 (D. Ore. Mar. 16, 2021) (the court lacks authority to grant preliminary injunctive relief because injunctive relief is not "of the same nature that may ultimately be granted" in a lawsuit seeking monetary damages); Edwards v. Nevada Dep't of Corr., No. 2:19-cv-0806 RFB VCF, 2020 WL 4925687, at *2, 2020 U.S. Dist. LEXIS 152519, at *4 (D. Nev. Aug. 21, 2020) (the court lacks authority to grant preliminary injunctive relief because it is not sufficiently connected to the underlying complaint which only seeks monetary damages); Martin v. Lona, No. 2:18-cv-2426 RFB VCF, 2020 WL 759882, at *2, 2020 U.S. Dist. LEXIS 23914, at *5 (D. Nev. Feb. 6, 2020) (same); Merritt v. Dimond, No. 17-cv-6101 LHK, 2018 WL 3126391, at *8, 2018 U.S. Dist. LEXIS 107676, at *20-22 (N.D. Cal. June 26, 2018) (no authority to grant preliminary injunctive relief because there is not a sufficient relationship between the TRO, which seeks to stop foreclosure sale and modification to a loan, and the SAC, which seeks only damages).[5]

Applying that rule here, the undersigned finds that the court lacks authority to issue preliminary injunctive relief in this case. The TAC seeks only monetary relief for past harms. Injunctive relief is not "of the same character" as monetary relief that would be granted finally if plaintiff were to succeed on his claims in the TAC. Accordingly, plaintiff's motion for injunctive relief should be denied.

> B. Plaintiff Fails to Put Forth Evidence Sufficient to Establish a Likelihood of Irreparable Harm

Even if the court had authority to issue injunctive relief in this case, plaintiff fails to establish he is entitled to such relief. The evidence attached to the motion for injunctive relief

---

[5] Even prior to Pacific Radiation Oncology, another judge from this court, relying on De Beers, reached the same conclusion. Miller v. Brown, No. CIV S-09-3403, 2010 WL 399137, at *2 (E.D. Cal. Jan. 28, 2010). There, the court explained, "[a] proper motion for [preliminary] injunctive relief must relate to the allegations of the complaint and seek an outcome that may ultimately be available in the action. If there is no such relation, injunctive relief is not properly sought." Id.

1 establishes the following.

2    On June 21, 2023, at another prison, plaintiff complained of eating one meal of day for two weeks and requested a temporary lay-in cell-feed chrono until he could be evaluated by his primary care physician. ECF No. 35 at 9-10. The next day, a temporary cell-feed chrono was issued until he was transferred. Id. at 11. After transfer, on August 16, 2023, plaintiff was issued a temporary six-month cell-feed chrono. Id. at 13. Due to plaintiff's "difficulty with movement, on February 5, 2024, before his cell-feed chrono expired, it was renewed until May 31, 2024. Id. at 14. On June 5, 2024, plaintiff received a temporary three-day cell-feed chrono. Id. at 15. On June 6, 2024, plaintiff complained of increased stress because his doctor was trying to take away his cell-feeding. Id. at 27. On August 20, 2024, plaintiff complained of black and/or bloody stool and that he had not been going to breakfast and lunch because he used to have a cell feed for it. Id. at 38. At the time, his lab work showed low hemoglobin and decrease in his red blood cell count. Id. at 26. That same day, he received a three-day cell-feed chrono. Id. at 16.

   On November 13, 2024, plaintiff complained to medical about being denied breakfast and lunch because he cannot go to the dining hall in the morning, and they do not want to deliver his meals. Id. at 35. He was informed he does not qualify for cell-feeding, but he does not agree with this determination. Id. at 28. On December 12, 2024, plaintiff received a four-day cell-feed chrono. Id. at 17. On December 20, 2024, the Prison Law Office wrote a letter the CDCR Office of Legal Affairs regarding CMF's failure to provide incontinence accommodations for Armstrong class members. Id. at 34. One of the issues identified was access to meals. Id.

   On January 6, 2025, a sergeant (non-defendant) prevented plaintiff from taking food from the dining hall back to his cell and told that he was not authorized to remove food. Id. at 31. Rather than confiscate the food, plaintiff was offered an opportunity to return to the dining hall to consume his meal, which he did. Id. at 32.

   On January 17, 2025, because plaintiff had "[l]ow hemoglobin hematocrit," further labs were ordered to confirm "anemia and check iron." Id. at 19. Plaintiff requested cell-feeding, but it was determined there was no indication for it at the time. Id. On January 30, 2025, plaintiff complained to medical that "[e]very joint in his body is painful," he "[w]akes up in a panic nearly

7

every night," "[l]oses several hours of sleep a night," he "[c]an't wait for the elevator and then be able to eat in the time allotted," he is only eating dinner, has not been to breakfast for three months, and wants meals delivered to his cell. Id. at 25-26.

On February 24, 2025, plaintiff again asked medical to issue a cell-feed chrono. Id. at 22. He was informed permanent cell-feeding is not an option. Id. Instead, he was again offered outpatient housing unit ("OHU") placement, which he once again declined. Id. OHU is "[a] designated housing area within institutions designed to provide supportive services, including low-intensity nursing care, for patients who require limited assistance with activities of daily living or short-term observations."[6]

Considering the above evidence, along with the evidence attached to the TAC, see ECF No. 42 at 32-78, plaintiff fails to establish a likelihood that he will suffer irreparable harm absent a preliminary injunction.

Plaintiff's assertion that he suffers from anemia due to the lack of a cell-feed regimen and that there is a likelihood that he will suffer irreparable harm absent a preliminary injunction is pure speculation and contradicted by the evidence. In August 2023, when plaintiff was on a cell-feed regimen, his hemoglobin was 13.6 and his red blood count was 4.75. ECF No. 42 at 65-66. In August 2024, after plaintiff had been off a cell-feed regimen for almost three months, his hemoglobin and red blood cell count dropped, 12.6 and 4.35, respectively. ECF No. 35 at 26. However, in January 2025, after plaintiff had been off a cell-feed regimen for over seven months, his hemoglobin and red blood cell count increased back to a normal range and close to what it was during plaintiff's cell-feed regimen period in August 2023. ECF No. 42 at 70 (red blood count 4.49), 74 (hemoglobin 13.3).

Plaintiff's assertion with respect to his Vitamin D deficiency and irreparable harm is also speculative. Plaintiff has not provided evidence that prior to June 2024, when his cell-feed

---

[6] OHU is defined in the CCHCS HCDOM. Health Care Department Operations Manual, Definitions, CALIFORNIA CORRECTIONAL HEALTH CARE SERVICES, https://www.cdcr.ca.gov/hcdom/dom/health-care-definitions/. The court takes judicial notice of this definition as used by CDCR. See Fed. R. Evid. 201; City of Sausalito v. O'Neill, 386 F.3d at 1224 n.2.

chrono was discontinued he *did not* have a Vitamin D deficiency or that he previously had a Vitamin D deficiency that *worsened after* the cell-feed regimen was discontinued, *and* that he continues to suffer from a Vitamin D deficiency. See ECF No. 35 at 23. Also, to the extent plaintiff claims his Vitamin D deficiency shows he is malnourished, the same medical records indicate plaintiff appeared "well-nourished." Id. Plaintiff does not contest this, which he could have tried to do with evidence that he is underweight and/or with other evidence of malnourishment *after* the cell-feed regimen was discontinued.[7]

    Plaintiff also fails to provide objective evidence that he suffers from increased ongoing stress, anxiety, and/or sleep issues because his cell-feed regimen was removed. Although the records show plaintiff has a history of post-traumatic stress and nightmare disorders, and that he was prescribed Prazosin a month after his cell-feed regimen was discontinued, the evidence shows these conditions predate the discontinuation of his cell-feed regimen. The evidence does not indicate why Prazosin was prescribed, for how long, and whether plaintiff is currently on this medication. See Id. at 52. The most recent medical records attached, for February 2025, do not list this medication, id. at 62, nor do any of his other medical records.

    Lastly, plaintiff's concerns regarding his risk of contracting COVID-19 in the dining hall are speculative and therefore insufficient to establish a likelihood of irreparable harm. The only piece of evidence plaintiff provides regarding COVID is a one-page print out from WebMD concerning the length of time COVID-19 can live on surfaces. ECF No. 35 at 30. However, the same one-page document specifies what precautions can be taken to reduce the risk of spreading

---

[7] In the TAC, plaintiff alleges that he is at risk of harm because he previously lost thirty-plus pounds in sixteen days at another prison when he was on one-meal a day due to the lack of a cell-feed chrono. See ECF No. 42 at 16. However, the evidence he cites does not show he lost weight during a two-week period he was without a cell-feed chrono or that the weight loss resulted in malnourishment. Instead, the evidence shows plaintiff lost 18.7 kilograms (approximately 41 pounds) during a *six-month period*, from February 2, 2023, to August 28, 2023; that, with the exception of a two week period in the middle of those six months, he had a cell-feed chrono; and that the weight loss was desirable because even with the weight loss, plaintiff was still overweight. See Id. at 50. Plaintiff's BMI after the weight loss was 29.45kg/m2, which is on the upper end of the overweight category, which ranges from 25-30kg/m2, and just under the obesity BMI category, which begins at 30kg/m2. See *Adult BMI Categories*, CENTER FOR DISEASE CONTROL, https://www.cdc.gov/bmi/adult-calculator/bmi-categories.html (last visited September 30, 2025). Plaintiff offers no evidence of his weight after September 2023.

1  COVID-19 through surfaces.  Id.  Plaintiff does not provide any evidence that defendant
2  Patterson has not implemented these precautions or other similar precautions in the dining hall,
3  and/or that given the conditions in the dining hall taking off his mask to eat exposes him to
4  serious risk of contracting COVID-19.[8]

Because speculation of the *possibility* of irreparable harm is insufficient to establish a *likelihood* of irreparable harm, plaintiff has not established that he is entitled to injunctive relief. See Winters, 555 U.S. at *22 (rejecting the Ninth's circuit's "possibility standard" for a "likelihood" standard because "[i]ssuing a preliminary injunction based on a possibility of irreparable harm is inconsistent with our characterization of injunctive relief as an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief").

V.  Plain Language Summary for Party Proceeding Without an Attorney

Since plaintiff is acting as his own attorney in this case, the court wants to make sure that the words of this order are understood.  The following information is meant to explain this order in plain English and is not intended as legal advice.

The undersigned magistrate judge is recommending that your third motion for preliminary injunctive relief be denied.  If you do not agree with this decision, you have 21 days to explain why it is not correct.  Label your explanation as "Objections to Magistrate Judge's Findings and Recommendations."  The district judge assigned to your case will make the final decision.

VI.  Conclusion

In accordance with the above, IT IS HEREBY ORDERED that plaintiff's request for a ruling on his motion for a preliminary injunction (ECF No. 39) is GRANTED based on the recommendation contained herein.

IT IS FURTHER RECOMMENDED that plaintiff's motion for a preliminary injunction

---

[8] The undersigned further notes that plaintiff does not assert a deliberate indifference claim based on the risk of contracting COVID-19 against defendant Patterson, the defendant he seeks to enjoin.  The only COVID-19 deliberate indifference-based claim in the TAC is against defendant Dail.  As noted previously, the court found that claim was non-cognizable as alleged and therefore could not be the basis of an injunction.

and/or temporary restraining order (ECF No. 35) be denied.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty-one days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any response to the objections shall be served and filed within fourteen days after service of the objections.  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED: October 1, 2025

/s/ Allison Claire
ALLISON CLAIRE
UNITED STATES MAGISTRATE JUDGE